STATE of Minnesota, Respondent,

v.

Ruth Ann RAMSAY, Appellant.

No. A10–28.

Court of Appeals of Minnesota.

Oct. 19, 2010.

---

Lori Swanson, Attorney General, St. Paul, MN; and David J. Hauser, Otter Tail County Attorney, Michelle M. Eldien, Assistant County Attorney, Fergus Falls, MN, for respondent.

Reid W. Brandborg, Brandborg Law Office, Fergus Falls, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; TOUSSAINT, Chief Judge; and SCHELLHAS, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Appellant Ruth Ann Ramsay challenges the district court's award of approximately $46,000 in restitution, particularly its allowance of approximately $42,000 in attorney fees that were incurred in a civil action brought by appellant's former employer, Minnesota Eyecare Network, Inc., against appellant for conversion of corporate funds. Respondent State of Minnesota asserts that the district court properly exercised its discretion by allowing restitution for losses incurred by Minnesota Eyecare during the investigation and litigation of the civil suit. Because the district court abused its discretion in awarding restitution in excess of the amount agreed to by Minnesota Eyecare when it settled its civil suit with appellant, we reverse and remand.

## FACTS

Minnesota Eyecare sued appellant in November 2007, alleging that she had converted funds through the unlawful use of the corporate credit card and converted cash for her own use between 2000 and 2007, that she had committed fraud, and that she was unjustly enriched. Minnesota Eyecare alleged that appellant had deprived it of funds and other property hav-

ing a value of approximately $125,000 to $150,000.

A criminal complaint was filed against appellant in January 2008, charging her with theft, theft by swindle, and financial transaction card fraud. The complaint alleged that appellant stole approximately $125,000 from Minnesota Eyecare in the form of cash, checks, and credit card transactions.

The civil case was settled in August 2008, after the parties participated in mediation. Under the terms of the settlement agreement, appellant agreed to pay Minnesota Eyecare $125,121 as compensation for its damages and "an additional $20,000 over a 5-year period of probation as a condition of her probation." Minnesota Eyecare agreed to recommend to the prosecutor in the criminal case that "restitution in the amount of $20,000 ... be ordered." The parties further agreed to "release each other from any and all claims or causes of action, including claims known and unknown, including, but not limited to, [Minnesota Eyecare's] claims of conversion and fraud against [appellant]." [1]

Shortly thereafter, appellant entered into a plea agreement with the prosecutor, in which it was contemplated that appellant would plead guilty to one count of theft, that the remaining counts would be dismissed, that she would receive a stay of adjudication, and that she would pay $125,121 to Minnesota Eyecare and an additional $20,000 over her five-year probationary period. This plea agreement, however, was rejected by the district court.

In February 2009, a second amended complaint was filed against appellant, charging her with 14 theft counts covering different time periods and alleging that she had stolen more than $124,000 from Minnesota Eyecare. Appellant again entered into a plea agreement; she agreed to plead guilty to an amended theft count and to receive a stay of imposition for up to five years. The conditions of the agreement included the following: "It is understood that [appellant] has paid [the] victim $125,121.00 through negotiation of this criminal charge and civil litigation resulting from these circumstances. It is further understood that the victim will seek additional restitution at sentencing. It is further understood that [appellant] will resist any additional award of restitution."

Appellant entered a plea of guilty to one lesser-included theft count in June 2009, admitting that she had taken in excess of $1,000 from Minnesota Eyecare between March 2007 and September 2007. Appellant acknowledged that, in addition to the $125,000 she had already paid, Minnesota Eyecare had claimed an additional amount, which was to be decided by the district court. Appellant agreed that it was up to the district court to determine the amount of restitution to be ordered.

Minnesota Eyecare thereafter claimed losses for purposes of restitution totaling $86,598.87. Appellant filed an affidavit in opposition to the claimed losses.

The district court subsequently issued an order granting in part and denying in part the requested amount of restitution. The court ordered payment of $45,893.18 in restitution, finding restitution appropriate for attorney fees ($42,800.76), accounting fees ($2,214.55), lock and key fees ($154.75), staff hours ($209.92), storage fees ($350), and sheriff's fees ($163.20). The court denied amounts requested for other staff hours ($13,917.17), doctors' hours ($25,200), expenses for court hear-

1. In December 2008, the district court dismissed the civil action and ordered that its dismissal "shall not affect [Minnesota Eye- care's] ability to recover $20,000 in restitution from [appellant] in conjunction with the criminal charges that are pending against [her]."

ings ($432.80), and copy expenses and office supplies ($218.89 plus $18.85), concluding that a sufficient factual basis was generally not provided for these expenses. The court also denied Minnesota Eyecare's request for mediation expenses ($1,039.78), concluding that the order for mediation had contemplated the parties' payment of their respective shares of mediation expenses.[2]

Appellant thereafter filed a motion to modify her sentence, which the district court granted in part and denied in part. The court first concluded that appellant is not entitled to offset the ordered restitution with the $125,121 she has already paid in settlement of the civil suit. The court acknowledged that the parties to the settlement agreed to recommend restitution in the amount of $20,000 but emphasized that appellant understood when she entered her plea that Minnesota Eyecare would seek restitution and that the district court would determine the appropriate amount. The court indicated that it was not the function "of the undersigned, who is the presiding judge in the criminal matter, to accept and/or enforce an agreement that was reached in the civil matter" and that the court would determine restitution pursuant to statute. The court relied on the analysis in its earlier order and concluded:

> The $125,121.00 [appellant] paid to [Minnesota Eyecare] was to reimburse for the wrongfully converted property and services. Conversely, the $45,893.18 ordered as restitution reimbursed [Minnesota Eyecare] for attor-

ney's fees and various other tangential expenses that, while not a reimbursement for the wrongfully converted property for which [Minnesota Eyecare] received payment through the civil proceedings, was nevertheless a loss that was incurred as a result of the conduct for which [appellant] was convicted. As such, [Minnesota Eyecare] is not receiving double recovery for its losses. [Appellant's] restitution will not be offset by the $125,121.00 previously paid to [Minnesota Eyecare], as that agreement was entered into independently of this Court's determinations in the above-entitled criminal matter and in resolution of a separate cause of action.

The district court next concluded that Minnesota Eyecare's attorney fees were incurred as a result of the conduct of which appellant was convicted and that those fees represent losses sustained as a result of that conduct. The court reasoned that Minnesota Eyecare incurred attorney fees in the civil action in order to protect its interests and that some of the fees were incurred to attach appellant's assets and prevent dissipation of those assets by appellant. Finally, the court rejected appellant's claim that an award of civil attorney fees as criminal restitution is contrary to public policy.[3]

## ISSUE

Did the district court abuse its discretion in ordering appellant to pay restitution of approximately $46,000, when the victim was bound by the terms of a civil

---

2. In its subsequent order, the district court concluded that these mediation expenses were proper items of restitution and modified the restitution award to include this amount.

3. In an order filed January 28, 2010, this court deferred the issue of the proper scope of review to this panel, noting that appellant's

notice of appeal challenges three orders, some of which may not be timely or appealable. At oral argument before this court, however, appellant's attorney abandoned an issue related to the conviction and clarified that the sole issue on appeal involves restitution, a sentencing issue that is within this court's scope of review.

settlement agreement to limit its restitution request to $20,000?

## ANALYSIS

■ A district court's order for restitution is reviewed under an abuse of discretion standard. *State v. Tenerelli,* 598 N.W.2d 668, 671 (Minn.1999). But determining whether an item meets the statutory requirements for restitution is a question of law that is "fully reviewable by the appellate court." *State v. Thole,* 614 N.W.2d 231, 234 (Minn.App.2000).

This court recently held that the complete settlement of all claims in a civil action between a defendant and a victim of economic loss precluded the state from seeking restitution on behalf of that victim in a related criminal case. *State v. Arends,* 786 N.W.2d 885, 889 (Minn.App. 2010), *pet. for review filed* (Minn. Sept. 13, 2010). *Arends* states: "Because proof of economic loss resulting from the offense is required to grant restitution, if a victim has not, in fact, sustained such a loss, restitution is inappropriate." *Id.* In *Arends,* the employee had filed counterclaims against the employer, and the parties agreed to release all claims and to take nothing in settlement of those claims. *Id.* at 887.

■ The civil settlement reached in this case is slightly different because Minnesota Eyecare agreed that "restitution in the amount of $20,000 ... be ordered." As in *Arends,* the terms of a binding civil settlement agreement between a defendant and the victim of the defendant's criminal conduct must be considered when determining restitution in the criminal matter, particularly when the bulk of the restitution sought arises from that civil suit. The civil settlement agreement in this case limits Minnesota Eyecare's losses for purposes of restitution to $20,000, and the state cannot seek, on Minnesota Eyecare's behalf, restitution over that amount. Although the state was not a party to the civil settlement, that agreement does bind the victim in this case and constitutes undisputed evidence of the victim's acknowledged losses. *See id.* at 889 ("A valid settlement agreement is final, conclusive, and binding upon the parties.") (citing *Theis v. Theis,* 271 Minn. 199, 204, 135 N.W.2d 740, 744 (1965)); *see also In re Welfare of M.R.H.,* 716 N.W.2d 349, 352 (Minn.App.2006) (holding that victim's parents, who were not parties to civil settlement agreement, could request restitution for losses they incurred as a result of crime), *review denied* (Minn. Aug. 15, 2006).

■■ Moreover, the losses claimed by Minnesota Eyecare must have some factual relationship to the crime committed by appellant. In this case, appellant pleaded guilty to and was convicted of one lesser included count of theft of more than $1,000 but less than $5,000. At her plea hearing, the civil settlement was mentioned but the other dismissed charges were not discussed and appellant did not provide a factual basis or admissions to support the dismissed charges. A defendant's underlying course of conduct can provide a basis for an upward durational departure in sentencing. *See State v. Srey,* 400 N.W.2d 722, 722–23 (Minn.1987) (holding that durational departure was proper when defendant pleaded guilty to one count of forgery but did not deny forging large number of other checks and when defendant agreed to pay restitution for entire amount determined to have been stolen). A district court may order a defendant to pay a restitution amount in excess of the monetary parameters of the offense of which he or she was convicted, but only if the higher amount is supported by a preponderance of the evidence presented at trial. *State v.*

**518**

*Terpstra,* 546 N.W.2d 280, 283 (Minn. 1996).

■ Restitution has a dual purpose of rehabilitating the defendant and compensating the victim, but the primary purpose in Minnesota is to compensate the victim. *See, e.g., State v. Pflepsen,* 590 N.W.2d 759, 769 (Minn.1999) ("Restitution is intended to be compensatory, not punitive."); *State v. Maidi,* 537 N.W.2d 280, 286 (Minn. 1995) (stating primary purpose of restitution is to compensate victim); *State v. Fader,* 358 N.W.2d 42, 48 (Minn.1984) (" 'restitution' connotes restoring or compensating the victim for his loss"). Thus, a sentencing court is required to consider the "amount of economic loss sustained by the victim," as well as the defendant's "income, resources, and obligations." Minn. Stat. § 611A.045, subd. 1 (2008). In this case, the district court abused its discretion in refusing to consider the terms of the civil settlement agreement, particularly when the victim implicitly agreed that an additional $20,000 was a reasonable amount to compensate it for its losses. The district court also abused its discre-tion in awarding an amount that, when added to the amount appellant has already paid in connection with the civil settlement, far exceeds the loss attributable to the offense of which she was convicted.

### DECISION

The district court abused its discretion in refusing to consider the terms of the civil settlement agreement reached between appellant and Minnesota Eyecare. We therefore reverse and remand the district court's restitution award. On remand, the district court may reopen the record if it concludes that additional evidence is necessary. Any restitution ordered by the district court, however, must be limited to no more than $20,000.

**Reversed and remanded.**