*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0857**

State of Minnesota,
Respondent,

vs.

Darnell Steven Cox,
Appellant.

**Filed December 29, 2014
Affirmed as modified
Ross, Judge**

Ramsey County District Court
File No. 62-CR-13-7801

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Laura S. Rosenthal, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chelsie Willett, Assistant Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

_____

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Hooten, Judge.

**ROSS**, Judge

Darnell Cox drove a stolen car and pleaded guilty to motor vehicle theft. The district court ordered him to pay the victim $744.60 in restitution. Cox appeals the district court's restitution order, arguing that his conduct leading to his conviction did not cause the victim's losses and that the district court failed to consider his inability to pay. Because $145 of the victim's losses did not directly result from Cox's conduct, we modify the restitution requirement and affirm.

## FACTS

The state charged Darnell Cox in October 2013 with motor vehicle theft under Minnesota Statutes section 609.52, subdivision 2(17) (2012). Cox agreed to plead guilty in return for the state's dropping an unrelated burglary charge and agreeing that Cox would receive the lowest possible guidelines sentence. Cox admitted that he drove the victim's car without permission during one week in January 2012. He did not admit that he took the car from the victim's garage, but he agreed that his actions constituted motor vehicle theft. The district court accepted Cox's plea.

Cox returned to court to be sentenced a month later. The probation office provided a presentence investigation report at the sentencing hearing. The state agreed with the report and requested that restitution be left open for 60 days so that the victim could submit an affidavit detailing her losses. The district court sentenced Cox consistent with the plea agreement but left restitution open.

The probation office submitted a restitution request and the affidavit of the car's owner, Alyssa Purdy. Purdy's affidavit asserted that the car theft cost her $1,146.82. This amount consisted of costs that were both directly and indirectly related to the car theft: $375.42 to replace stolen skis; $145 for a locksmith to change her household locks because her house key was taken from her garage during the theft; $500 to reimburse her for the insurance deductible to repair damage to her car; and $118 in interim transportation costs. The probation office corrected a mathematical error in Purdy's affidavit, resulting in a total claim of $1,138.42, which the district court initially ordered Cox to pay.

Cox challenged the restitution order and the district court conducted a hearing. Purdy was the only testifying witness. She said that she entered her garage in January 2012 and saw that her car had been taken. She noticed that her house key, which she kept on a nail in the garage, was also missing. Fearing that someone may use the key to enter her home, she had her locks changed. She also noticed that two pairs of skis were missing from the garage, so she purchased a new pair to replace them. Police later recovered her stolen skis. Purdy's stolen car was located, and she testified that it had "some superficial damage." Her insurer covered the repair cost, but only after she paid a $500 deductible. Purdy had to use cab service after the theft, and she paid $50 to rent a car while waiting for hers to be repaired.

Cox's attorney argued that the state had not laid a factual basis for any direct loss to Purdy as a result of Cox's merely driving the car without permission. She pointed out that Cox had never admitted to taking the car from the garage or to damaging it. She also

maintained that the state had not established that Cox could afford to pay restitution and asserted that he was incarcerated.

The district court ordered restitution in the amount of Purdy's affidavit, excluding only the cost of the ski purchase. The restitution order totaled $744.60 ($500 for the insurance deductible, $145 for the locksmith, $49.60 for cab fare, and $50 for car rental). The district court reasoned that there were "certain consequences that happen when you're doing things without somebody's permission, including the fact that things are taken and that's going to be all part of the same crime." Rejecting Cox's argument that he could not afford to pay, the district court stated, "[Y]ou can have this deducted from any prison earnings, but I am ordering restitution." Cox appeals.

## D E C I S I O N

Cox challenges the amount of restitution ordered by the district court. District courts have broad discretion in awarding restitution. *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn. 1999). But whether an item meets the restitution statute's requirements is a legal question that we review de novo. *State v. Ramsay*, 789 N.W.2d 513, 517 (Minn. App. 2010). Cox argues that the ordered amount covers losses he did not cause and cannot afford to pay. He is partly correct.

Cox persuasively argues that the record contains an insufficient factual basis to show that all of the claimed losses result from his criminal conduct. A district court may order a criminal to pay his victim restitution. Minn. Stat. § 611A.04 (2012). A loss entitling a victim to restitution must be "directly caused by the conduct for which the defendant was convicted." *State v. Latimer*, 604 N.W.2d 103, 105 (Minn. App. 1999)

4

(quotation omitted). A restitution award must be supported by facts on the record. *State v. Johnson*, 851 N.W.2d 60, 65 (Minn. 2014). The state bears the burden of proving by a preponderance of the evidence the amount of the victim's loss resulting from the offense and the appropriateness of the restitution award. Minn. Stat. § 611A.045, subd. 3(a) (2012); *Johnson*, 851 N.W.2d at 65.

When Cox pleaded guilty to the motor vehicle theft, he admitted to driving Purdy's car without permission between January 11 and 18. The car left Purdy's garage on January 11 undamaged and returned to her on January 18 damaged, and this cost Purdy money. The goal in ordering restitution is to restore the victim to the financial position she had before the crime. *State v. Palubicki*, 727 N.W.2d 662, 666 (Minn. 2007). The district court must consider "the amount of economic loss sustained by the victim as a result of the offense." Minn. Stat. § 611A.045, subd. 1(a) (2012). The car thief's (or car thieves') operation and treatment of the car resulted in Purdy's need to find alternative transportation and to fix the car. The state provided evidence that Cox paid a $500 deductible to cover repairs and $99.60 for taxi and car-rental costs. The state therefore met its burden to prove that Cox's car-theft crime directly caused these losses.

But the locksmith cost resulted from the garage burglary precipitating the car theft, and Cox specifically denied ever entering Purdy's garage to take the car. The state established that Purdy had kept the missing key on a nail in her garage and that she noticed it was missing when she saw that her car had been taken. This is sufficient circumstantial evidence to prove that whoever entered the garage to steal the car also took the key. But the garage entry was unnecessary to Cox's guilty plea because motor vehicle

5

theft does not include an entry element and he denied the entry. The factual record therefore does not sufficiently attribute the key-theft cost to Cox's criminal behavior. The district court should not have ordered Cox to pay $145 for the locksmith charge.

Cox does not convince us that the district court abused its discretion by failing to consider his purported inability to pay. In addition to requiring the district court to consider the amount of a victim's economic loss, the restitution statute requires the court to consider "the income, resources, and obligations of the defendant." Minn. Stat. § 611A.045, subd. 1(a). But it does not require that a court make specific findings on the issue. *State v. Nelson*, 796 N.W.2d 343, 347 (Minn. App. 2011). We are satisfied that the district court sufficiently considered Cox's ability to pay. The district court reviewed the presentence investigation report, which discussed Cox's circumstances. The district court heard Cox's inability-to-pay argument specifically presented by Cox's counsel. And the district court expressly addressed the issue in its restitution order. The district court's generalized observation about the capacity of Cox's prison income to cover the order was sufficient analysis in light of the objectively small restitution amount.

Because the record supports the district court's restitution order in every regard except that it fails to include any evidence that Cox entered the garage and took Purdy's key, we modify the order by eliminating the resulting $145 locksmith charge. We modify the restitution requirement to $599.60 and affirm the order.

**Affirmed as modified.**