*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1406**

Michael Anthony Powell, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 20, 2015
Affirmed in part, reversed in part, and remanded
Reyes, Judge**

Clay County District Court
File No. 14CR112280

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brian J. Melton, Clay County Attorney, Pamela Harris, Chief Assistant County Attorney, Moorhead, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Larkin, Judge; and Reyes, Judge.

# U N P U B L I S H E D  O P I N I O N

**REYES**, Judge

On appeal from the postconviction order requiring him to pay $20,765.92 in restitution, appellant Michael Anthony Powell argues that the state failed to prove that the

victim's medical expenses, prescription-drug expenses, and lost wages were all directly tied to the offense of second-degree assault with a dangerous weapon. Powell also argues that the district court failed to consider his income, resources, and obligations in determining his ability to pay restitution. We affirm in part, reverse in part, and remand to the district court to modify the restitution award to $20,681.45.

## FACTS

On July 5, 2011, Powell was charged with one count of first-degree criminal sexual conduct, one count of second-degree assault with a dangerous weapon, and one count of false imprisonment. Powell pleaded guilty to second-degree assault with a dangerous weapon and the other charges were dismissed. Powell admitted that he and the victim, V.B.M., got into an argument in his trailer and he cut her with a knife near her collar bone. The district court sentenced Powell to 34 months in prison and ordered him to pay restitution in a preliminary amount of $11,601.11, but left the record open for 30 days so the victim could obtain her medical bills. On December 27, 2011, the district court received the medical bills and issued an amended order which increased the restitution amount to $21,313.92. On January 18, 2012, Powell timely filed a motion challenging the amount of restitution awarded. On March 19, 2012, after a hearing was held on the matter, the district court set the total amount of restitution owed at $20,765.92. Powell did not directly appeal this order.

On November 20, 2013, Powell filed a petition for postconviction relief, again challenging the restitution amount. The district court denied Powell's petition and upheld

the $20,765.92 restitution amount, reasoning that the state had met its burden of proving that the victim's economic losses were the result of the offense. This appeal followed.

## DECISION

There are three issues presented in this case: (1) whether Powell's claims are properly before this court; (2) whether the state met its burden to show that the victim's economic loss was directly caused by Powell's crime; and (3) whether the district court erred by failing to consider Powell's income, resources, or obligation in determining the restitution amount. We address each in turn.

## I. Powell's claims are properly before this court.

When reviewing the decision of a postconviction court, we review questions of law de novo. *Arredondo v. State*, 754 N.W.2d 566, 570 (Minn. 2008). Our review of factual findings is limited to determining whether there is sufficient evidence in the record to support the findings of the postconviction court. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007). The decisions of a postconviction court will not be disturbed unless the court abused its discretion. *Id.*

The state argues that Powell's petition for postconviction relief is barred pursuant to *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976). The rule under *Knaffla* states that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." 309 Minn. at 252, 243 N.W.2d at 741. The statutory version of this rule states that "[a] petition for postconviction relief after a direct appeal has been

3

completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence." Minn. Stat. § 590.01 (2014).

Powell did not file a direct appeal. *See* Minn. R. Crim. P. 28.05 (setting a 90-day deadline in filing an appeal from a sentence imposed); *State v. Borg*, 834 N.W.2d 194, 197 (Minn. 2013) ("[W]e conclude that court-ordered restitution is part of a defendant's sentence."). The state argues that under *Knaffla*, Powell could only obtain review of the restitution amount by bringing a direct appeal. Failure to do so, the state contends, means that all matters that could have been raised in a direct appeal (i.e. the restitution amount) are barred in a subsequent petition for postconviction relief. We disagree.

In *Knaffla*, the defendant did not pursue a direct appeal and instead filed a petition for postconviction relief after the time for a direct appeal had expired. 309 Minn. at 247, 243 N.W.2d at 738. The Minnesota Supreme Court permitted the appeal, stating that "in a postconviction proceeding, relief is to be predicated, not upon a determination as to whether direct appeal from the conviction was taken within the prescribed time limitations, but rather upon compliance with the procedural requirements of [section 590]." *Id.* at 252, 243 N.W.2d at 741. The court noted, "[t]he salient feature of [section 590] . . . is that a convicted defendant is entitled to at least one right of review by an appellate or postconviction court." *Id.* Accordingly, *Knaffla*'s own language indicates that its bar applies only "where direct appeal has once been taken." *Id.* No such appeal was taken here.

Similarly, in *Deegan v. State*, the defendant did not pursue a direct appeal and only filed a petition for postconviction relief. 711 N.W.2d 89, 92 (Minn. 2006). The

4

court noted that "[b]ecause a first review by postconviction proceeding in Minnesota is substantially similar to a direct appeal, and appears to differ from first review by postconviction proceedings in other jurisdictions, it may well be that the right to one review—through *either direct appeal or postconviction proceeding*—is a tradition unique to Minnesota." *Id.* at 95 (quotation omitted) (emphasis added). In light of these decisions, we conclude that *Knaffla*'s rule does not bar petitions for postconviction relief where no direct appeal has been filed.

We also note that Powell's challenge is timely. After the district court ordered restitution on December 27, 2011, Powell had 30 days to challenge the restitution amount. *See* Minn. Stat. § 611A.045, subd. 3(b) (2010). Had Powell failed to do so, his current postconviction petition challenging restitution would have been untimely. *State v. Maddox*, 825 N.W.2d 140, 144 (Minn. App. 2013) ("[A] defendant who fails to timely challenge restitution under section 611A.045, subdivision 3(b), may not challenge restitution in a postconviction-relief petition."). But Powell properly challenged the restitution order within the 30-day time period. And because, Chapter 590 is broad enough to cover a right of first review by postconviction petition, Powell's current challenges to the restitution amount are properly before this court.

## II.    The state met its burden to show that the victim's economic loss was directly caused by Powell's crime.

"A crime victim has the right to receive restitution as part of the disposition of a criminal charge." *State v. Terpstra*, 546 N.W.2d 280, 282 (Minn. 1996) (quotation omitted); Minn. Stat. § 611A.04, subd. 1(a) (2010) (stating that a district court may order

5

a criminal to pay his victim's restitution). "The primary purpose of restitution is to restore crime victims to the same financial position they were in before the crime." *State v. Johnson*, 851 N.W.2d 60, 65 (Minn. 2014). District courts have broad discretion in awarding restitution. *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn. 1999). But whether an item meets the restitution statute's requirements is a legal question reviewed de novo. *State v. Ramsay*, 789 N.W.2d 513, 517 (Minn. App. 2010).

A victim's request for restitution may include out-of-pocket losses that occurred as a result of the crime. Minn. Stat. § 611A.04, subd. 1(a). But a victim's losses must be "directly caused by the conduct that led to [the defendant's] conviction." *State v. Miller*, 842 N.W.2d 474, 477 (Minn. App. 2014) (quotation omitted), *review denied* (Minn. Apr. 15, 2014). "The burden of demonstrating the amount of loss sustained by a victim is on the prosecution." *Johnson*, 851 N.W.2d at 65. A district court must determine whether "a restitution claim . . . [is] so attenuated in its cause that it cannot be said to result from the defendant's criminal act." *See State v. Palubicki*, 727 N.W.2d 662, 667 (Minn. 2007). An economic loss must be "a reasonably foreseeable result of, and [be] directly caused by, [a defendant's] actions." *State v. Maxwell*, 802 N.W.2d 849, 853 (Minn. App. 2011), *review denied* (Minn. Oct. 26, 2011).

In determining the amount of restitution, Minn. Stat. § 611A.04, subd. 1(a) provides:

> The court or its designee shall obtain the information from the victim in affidavit form or by other competent evidence. Information submitted relating to restitution must describe the items or elements of loss, itemize the total dollar amounts of

6

restitution claimed, and specify the reasons justifying these amounts, if restitution is in the form of money or property.

To contest the restitution amount, the offender initially has the burden to produce evidence by filing "a detailed sworn affidavit . . . setting forth all challenges to the restitution or items of restitution, and specifying all reasons justifying dollar amounts of restitution which differ from the amounts requested by the victim." Minn. Stat. § 611A.045, subd. 3(a) (2010). Once an offender raises a proper challenge, the state bears the burden to show by a preponderance of the evidence that the restitution amount is appropriate. *Id*.; *see also State v. Thole*, 614 N.W.2d 231, 235 (Minn. App. 2000).

Powell argues that the state failed to show that his offense directly caused economic loss with respect to V.B.M.'s: (1) medical bills; (2) prescription drugs; and (3) lost wages.

### A. Medical bills

Powell makes two arguments with respect to V.B.M.'s medical bills. First, Powell argues that there is no evidence that the medical bills caused actual economic loss because there was no evidence V.B.M. actually paid them or that she had not received any discounts. This argument was not properly pleaded before the district court in Powell's affidavit challenging restitution. As previously stated, the burden of production is initially on Powell to submit "a detailed sworn affidavit . . . setting forth all challenges to the restitution or items of restitution." Minn. Stat. § 611A.045, subd. 3(a). Such an affidavit "is both the sole vehicle by which the offender can meet the burden of pleading, and an essential element of the offender's case required to meet the burden of

7

production." *Thole*, 614 N.W.2d at 235. Here, Powell's affidavit only challenges the causal relationship between the offense and the medical bills and prescription drugs. The affidavit makes no mention of V.B.M.'s failure to pay any bills or potentially receiving discounts on some visits, as he currently argues. Because Powell failed to allege such arguments in his pleadings, we will not consider them on appeal.

Second, Powell argues that there was no documentation showing that the medical costs were all directly caused by the offense. Powell contends that although medical bills were submitted, there was no documentation specifically detailing what diagnosis V.B.M. received, what treatment occurred, or how the treatment was tied to the assault. As to the required level of specificity, the information submitted for restitution "must describe the items or elements of loss, itemize the total dollar amounts of restitution claimed, and specify the reasons justifying these amounts." Minn. Stat. § 611A.04, subd. 1(a).

V.B.M. submitted medical bills from three different health-care providers. Each bill contained line-by-line information detailing the date of service, description of services provided, and the amount charged. The information in these bills was corroborated by V.B.M. at the restitution hearing when she testified that all of her ongoing medical expenses were caused by the assault. On cross-examination, V.B.M. testified about specific treatments she underwent as a result of the assault, including physical therapy, emergency room trips for pain, hearing tests, trips to a chiropractor, bulging disks in her back and neck, and MRI tests. V.B.M. also submitted a victim-impact statement, which included medical evaluations from two different doctors detailing the specific treatments required as a result of the assault.

8

Based on the medical bills, testimony, and documents submitted by V.B.M., we conclude that the state has sufficiently "describe[d] the items or elements of loss, itemize[d] the total dollar amounts of restitution claimed, and specif[ied] the reasons justifying these amounts." *Id*. The statute simply does not require the amount of specificity Powell would ascribe. *See Hughes v. State*, 815 N.W.2d 602, 605 (Minn. 2012) (concluding in a case involving a challenge to the specificity of the factual basis for a restitution award, that ample evidence supported a finding that the request for funeral expenses was sufficiently specific). "Although it would be unreasonable to expect a receipt, or even the exact price, for every purchase, it is not unreasonable to request some amount of detail in the description and general costs of items purchased." *State v. Keehn*, 554 N.W.2d 405, 408 (Minn. App. 1996), *review denied* (Minn. Dec. 17, 1996). We conclude that medical bills specifying the date, services provided, and exact amount charged—all of which were linked to the offense by the victim's testimony and corroborated by documents from medical experts—certainly rise to the level of "some amount of detail." *Id*.

### B.    Prescription drugs

Next, Powell challenges the amount of restitution allocated for prescription-drug costs. In her restitution affidavit, V.B.M. claimed $338.06 in prescription-drug costs and submitted receipts from White Drug Pharmacy in support of this figure. Powell argues that the receipts alone are not specific enough to satisfy the state's burden and fail to show that the medication was a result of the offense.

9

The documentation surrounding the prescription drugs is detailed enough to satisfy the requirements of section 611A.04, sudivision 1(a). V.B.M.'s receipts include a specific prescription number and the amount charged. V.B.M. testified that the prescription medication came as a result of the assault, that she had never needed any such medication prior to the assault, and provided details on what the medication was for, including face and muscle relaxers, sinus issues related to the assault, and pain management. These statements, coupled with the provided receipts, include the amount of detail required by *Keehn*. 554 N.W.2d at 408. Indeed, this is the exact type of documentation that *Keehn* believed would be going above and beyond the required level of specificity. *Id.* ("Although it would be unreasonable to expect *a receipt, or even the exact price, for every purchase*, it is not unreasonable to request some amount of detail in the description and general costs of items purchased." (emphasis added)). Accordingly, the prescription drugs are an appropriate item for restitution.

There is, however, an issue with the amount allocated for the prescription drugs. As previously stated, V.B.M. claimed $338.06 in prescription-drug costs in her affidavit. V.B.M. appears to have arrived at this figure by adding up the total amounts detailed on the receipts. But a number of the submitted receipts are duplicates of the same photocopy. And one receipt is dated August 19, 2010, which is almost a year prior to the date of the offense and therefore cannot be considered to be "directly caused by the conduct for which the defendant was convicted." *Latimer*, 604 N.W.2d at 105 (quotation omitted). In addition, one of the receipts is for "Advil Allergy and Sinus" rather than a prescription. Because purchasing Advil is likely "so attenuated in its cause that it cannot

10

be said to result from the defendant's criminal act," it should not have been eligible for restitution. *See Palubicki*, 727 N.W.2d at 667 (declining to adopt a but-for test for restitution but requiring that losses be a direct result of the crime, which includes the expenses of decedent's children to attend the murder trial). The district court even acknowledged as much when it commented during the restitution hearing, "I will not be giving her any restitution on any allergy medications so that's kind of a given." Accordingly, the district court clearly erred when it awarded restitution in the full amount of $338.06 for the prescription drugs. Subtracting the duplicate receipts, the receipt dated prior to the offense, and the receipt for Advil, the restitution amount for prescription medication should be properly set at $253.59.

### C. Lost wages

Powell challenges the district court's award of restitution for V.B.M.'s lost wages. In its restitution request, the state sought $7,969.26 to be paid to the Minnesota Crime Victim Reparations Board (Crime Board), $7,255.26 of which was for V.B.M.'s lost wages as a result of losing her housecleaning business. Powell argues that the state failed to show that V.B.M. suffered lost wages in the amount claimed as a result of the offense.

Powell's lost-wages argument suffers from the same problem as his argument that V.B.M. never paid her medical bills—his affidavit challenging restitution makes no mention of V.B.M.'s lost wages. Because Powell failed to submit "a detailed sworn affidavit . . . setting forth all challenges to the restitution or items of restitution," he has not sufficiently pleaded the allegations relating to lost wages and we will not consider them here. *See* Minn. Stat. § 611A.045, subd. 3(a).

11

**III.    The district court erred considered Powell's income, resources, or obligation in determining the restitution amount.**

Under Minn. Stat. § 611A.045, subd. 1(a)(2) (2014), the district court must consider "the income, resources, and obligations of the defendant" when determining whether to order restitution and the amount of restitution. Powell argues that the district court abused its discretion by failing to consider Powell's financial situation when ordering restitution.

Powell misconstrues what the statute requires of the district court. The statute does not require that the district court explicitly discuss the offender's ability to pay in its findings. Minn. Stat. § 611A.04, .045 (containing no provision requiring the court to issue findings regarding a defendant's financial situation); *see also State v. Lindsey*, 632 N.W.2d 652, 663-64 (Minn. 2001) (concluding that the district court did not abuse its discretion by ordering an indigent prison inmate to pay $32,682.93 in restitution). Here, the district court heard testimony regarding Powell's ability to pay both at the restitution hearing and later at the postconviction petition hearing. Powell submitted over 30 pages of exhibits relating to his ability to pay, including tax returns, W-2's, garnishment letters, utility bills, and information on his debts. The district court specifically acknowledged Powell's diminished earning capacity in its order following the postconviction relief hearing. While Powell may not agree with its determination, the district court did consider Powell's financial situation and thus satisfied the requirements of section 611A.045.

We affirm the district court's denial of Powell's petition for postconviction relief. However, we reverse the district court's restitution award relating to the victim's prescription drug expenses. We remand to the district court for an order reducing the amount allocated for prescription drug expenses from $338.06 to $253.59. The total modified restitution award should be $20,681.45.

**Affirmed in part, reversed in part, and remanded.**