*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1180**

Tony Lee Love, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed May 9, 2016
Reversed and remanded
Reyes, Judge**

Ramsey County District Court
File No. 62CR112707

Bradford Colbert, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Laura Rosenthal, Assistant County Attorney, Zach Lyngaas, Certified Student Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REYES**, Judge

On appeal from his convictions of aiding an offender to avoid arrest and aiding an offender accomplice after the fact, appellant argues that the postconviction court erred by ordering him to pay $55,000 in joint and several restitution because he was not the direct cause of the complainant's loss and that it did not properly consider his ability to pay. We reverse and remand for a restitution hearing.

## FACTS

On April 14, 2010, Daniel Nixon and Rayford Dixon robbed complainant, C.V., the owner of Roseville Liquor, d/b/a Chuchao Liquor in Roseville. They fled with $65,000 contained in labeled envelopes. While they were fleeing, C.V. shot at Nixon and Dixon's car, disabling it. The suspects fled on foot to a nearby apartment building and hid in the back parking lot. At trial, Dixon testified that he contacted appellant, Tony Lee Love, to pick them up, which appellant did. An apartment resident testified that he saw appellant's Chevrolet pick-up truck in the parking lot, and he saw two men get into the truck. He provided appellant's truck's license-plate number and described the truck to law enforcement on the day of the robbery.

At approximately 5:00 p.m. that same day, police questioned appellant about the robbery. He denied involvement in the robbery, going to the apartment complex, or picking anyone up. But $1,600 was found in his pocket in $100 bills, in addition to the $121 in bills and $1.84 in change found in his wallet. One year later, appellant was charged with aiding an offender to avoid arrest in violation of Minn. Stat. § 609.495

subd. l(a).  The complaint was later amended, and appellant was charged with aiding an offender as an accomplice after the fact in violation of Minn. Stat. § 609.495, subd. 3. The jury found appellant guilty of both counts.  The district court sentenced appellant to 17 months in prison, but stayed the sentence for three years and ordered him to pay restitution jointly and severally with Nixon and Dixon in the amount of $55,000.

Appellant filed a petition for postconviction relief challenging the district court's restitution order.  At a postconviction hearing, appellant argued that his conduct did not directly cause C.V.'s losses, and his ability to pay was not considered.  A presentence investigation report (PSI) was discussed regarding appellant's financial circumstances. The postconviction court denied appellant's motion for postconviction relief.  This appeal follows.

**D E C I S I O N**

## I.    The restitution order

Appellant argues that his conduct did not directly cause C.V.'s losses and that the postconviction court abused its discretion by failing to properly consider his ability to pay when ordering restitution.  Because we agree with appellant on the ability-to-pay claim, we consider only this issue.

Crime victims have a "right to receive restitution as part of the disposition of a criminal charge."  Minn. Stat. § 611A.04, subd. 1(a) (2014) (stating that a district court may order a criminal to pay his victim's restitution); *State v. Terpstra*, 546 N.W.2d 280, 282 (Minn. 1996) (quotation omitted).  "Restitution has a dual purpose of rehabilitating the defendant and compensating the victim, but the primary purpose in Minnesota is to

3

compensate the victim." *State v. Ramsay*, 789 N.W.2d 513, 518 (Minn. App. 2010). As such, the district court must consider both the "amount of economic loss sustained by the victim" and "the income, resources, and obligations of the defendant" when determining whether to order restitution and the amount of restitution. Minn. Stat. § 611A.045, subd. 1(a) (2014).

District courts have broad discretion in awarding restitution. *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn. 1999). We will affirm a district court's restitution order, even when the defendant claims a present inability to pay, so long as the district court (1) considered the defendant's ability to pay by examining his income, resources, and obligations and (2) the restitution was set in installments based on the defendant's ability to pay. Minn. Stat. § 611A.045, subds. 1(a), 2a (2014); *see State v. Maidi*, 537 N.W.2d 280, 285 (Minn. 1995). We review the district court's restitution determination for an abuse of discretion. *Tenerelli*, 598 N.W.2d at 672. A district court abuses its discretion when it (1) misapplies the law or (2) makes factual findings that are clearly erroneous. *State v. Cassidy*, 567 N.W.2d 707, 709-10 (Minn. 1997) (stating that clearly erroneous factual findings constitute an abuse of discretion); *State v. Mix*, 646 N.W.2d 247, 250 (Minn. App. 2002) (illustrating that a district "court abuses its discretion when it acts arbitrarily, without justification, or in contravention of law"), *review denied* (Minn. Aug. 20, 2002); *see also State v. Miller*, 842 N.W.2d 474, 479 (Minn. App. 2014) (reversing the restitution order and remanding where the district court failed to make findings regarding Miller's ability to pay and ordered the full amount of restitution to be paid in 90 days despite Miller's lack of resources and unemployment), *review denied* (Apr. 15,

4

2014). However, whether an item is compensable under the restitution statute is a legal question we review de novo. *See Ramsay*, 789 N.W.2d at 517.

The postconviction court concluded that, based on appellant's "age and past work experience. . . he has the ability to earn money in the future. . . . Today he is working as a scrapper.[1] Therefore, [appellant] has shown that he is resourceful and it is only appropriate that he pay restitution."[2] The postconviction court's order did not fully consider appellant's "income, resources, and obligations." Minn. Stat. § 611A.045, subd. 1(a)(2).

Here, the PSI report disclosed that, with respect to his income, appellant received his GED while incarcerated, has a history of short-term employment, is not currently employed, and has not been employed since December 2011. Other than the $200 per month appellant receives in food stamps and $721 from his disability payment, he does not have regular income. Appellant is "legally blind in his left eye, due to a combination of diabetes and glaucoma," and his primary issue is "a lack of steady employment." Appellant has some vocational training in cooking and truck driving with a Class B license, but he has been unable to maintain long-term, steady employment for longer than a few months since 2011. Prior to 2011, he worked seasonal construction for five to six summers, as a worker for the City of St. Paul parks for nine months, as a chef in his

---

[1] Appellant defines working as a "scrapper" as recycling metal.
[2] The postconviction court also concluded that appellant "started a moving business prior to his arrest and conviction for this crime." The record does not support this conclusion. The record reflects that defendant Rayford Dixon, not appellant, attempted to start a moving company prior to his related burglary conviction. The PSI report also does not support this finding.

5

catering business, and as a driver for the department of health for about four years. The only constant has been working as a scrapper in between jobs.

The PSI report disclosed that, with respect to appellant's resources, he owns a 1990 Chevy Silverado truck.

The PSI report also disclosed that, with respect to appellant's obligations, he is $60,000 in arrears on child support and owes $40,000 on a school loan.[3] In addition, appellant submitted an affidavit regarding his ability to pay restitution stating that, of the approximately $1,200 he makes a month, $721 is from his disability payment and the remainder is from working as a scrapper, but he is obligated to pay $600 a month in child support, $600 monthly for rent, $45 monthly for his cellular telephone, and he has student-loan debt.

We reverse and remand for a restitution hearing limited to considering whether appellant has the ability to pay restitution of $55,000 based on his income, resources, and obligations and if not, whether restitution should be modified accordingly. Minn. Stat. §§ 611A.045, subd. 1(a)(2), .04, subd. 1(c) (stating that "[i]f the court grants partial restitution it shall also specify the full amount of restitution that may be docketed as a civil judgment.") Appellant shall be afforded the assistance of counsel at this hearing.

---

[3] We note that there is a discrepancy with respect to the amount of appellant's student-loan debt and child-support obligations. The PSI report disclosed that appellant owes $40,000 on a school loan, and his monthly child-support obligation is $400, but his affidavit states that he owes $9,000 on the school loan and his monthly child-support obligation is $600. Nonetheless, his obligations in the form of debts and monthly payments are significant.

Finally, we acknowledge that both Nixon and Dixon are also responsible for paying restitution to the complainant in this case. As such, the complainant is being compensated. *See Ramsay*, 789 N.W.2d at 518 (explaining that the primary purpose of a restitution award is for victim compensation).

**Reversed and remanded.**