# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0213

State of Minnesota,
Respondent,

vs.

Almanzo Ousley Cotton,
Appellant.

**Filed September 5, 2023**
**Affirmed in part and remanded**
**Frisch, Judge**

Hennepin County District Court
File No. 27-CR-21-1721

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Nicole Cornale, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Frisch, Presiding Judge; Slieter, Judge; and Hooten, Judge.[*]

## SYLLABUS

1.      Minn. Stat. § 611A.54 (2022) applies only to the issuance of reparations, not restitution.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

2. Minn. Stat. § 611A.045, subd. 2a (2022), requires a district court to include in every restitution order a payment schedule or structure.

## OPINION

**FRISCH**, Judge

Appellant argues that the district court abused its discretion in awarding restitution to the Minnesota Crime Victims Reparations Board (CVRB) on behalf of the crime victim without reducing that award to account for private funds donated for the benefit of the crime victim and otherwise erred in not including a payment schedule in its final restitution order. Because the district court is not required to consider collateral sources when determining restitution but must include a payment schedule in every restitution order, we affirm in part and remand.

## FACTS

Respondent State of Minnesota charged appellant Almanzo Ousley Cotton with one count of second-degree intentional murder and one count of second-degree unintentional murder while committing a felony (third-degree assault). A jury found Cotton guilty of both counts.

The district court sentenced Cotton to 306 months' imprisonment and ordered restitution in the amount of $2,362 to the CVRB for the cremation expenses that the CVRB paid as reparations to the crime victim's daughter.[1] Cotton contested the amount of

---

[1] Effective August 1, 2023, the legislature changed "Reparations" to "Reimbursement" in the CVRB's name and throughout the text of the Minnesota Crime Victims Reparations Act, Minn. Stat. §§ 611A.51-.68 (2022). The legislature did not enact any relevant substantive changes to the statutory sections at issue.

restitution, requested a hearing, and filed an affidavit in support of his motion. Cotton argued that, in calculating the restitution award, the district court should consider funds the crime victim's daughter had received from a GoFundMe campaign established for her benefit.[2]

At the restitution hearing, the district court received testimony from a CVRB claims manager and Cotton, along with four exhibits: (1) the claim filed with the CVRB for the crime victim's cremation costs and related records, (2) the CVRB's collateral-sources policy, (3) GoFundMe records for the campaign benefiting the crime victim's daughter, and (4) a memorandum authored by the CVRB claims manager with additional CVRB reimbursement records. The following facts were established at the restitution hearing.

On November 30, 2020, the crime victim's daughter paid $2,362 by personal credit card for the cremation of the crime victim's remains and related expenses. On December 28, an individual created a GoFundMe campaign to raise funds from third-party donations to benefit the crime victim's daughter. The stated purpose of the campaign was to raise funds to pay for certain expenses related to the crime, specifically legal expenses, a memorial for the victim, travel to scatter the victim's ashes in her home country, expenses related to selling the crime victim's house, and medical and mental-health-care expenses. The GoFundMe campaign did not request donations for the cost of cremation.[3]

---

[2] GoFundMe is an online fundraising platform.

[3] The CVRB adopted a policy not to deduct reparations based on GoFundMe accounts "when the family indicated [the funds] are going to be used for expenses not covered by the Board." The record also shows that the CVRB "does not consider crowd funding as a collateral source" due to practical limitations such as being unable to determine if

On January 13, 2021, the CVRB received an application from the crime victim's daughter requesting $2,362 for cremation expenses. On November 17, the CVRB reimbursed $2,362 to the crime victim's daughter for the cremation expenses. By April 27, 2022, third parties had donated about $14,000 to the GoFundMe campaign.

The district court issued a second restitution order denying Cotton's challenge to restitution. The district court concluded that Cotton had met his burden of production to challenge the propriety of the restitution award. It also concluded that the crime victim's daughter had sustained economic loss from the crime in the amount of $2,362 for cremation expenses. It stated that the record did not support a finding that the crime victim's daughter had used funds from the GoFundMe campaign to pay for the cremation expenses. Thus, the district court concluded that the funds raised by the GoFundMe campaign were not used as "a collateral source" to recoup the economic loss, and therefore the district court need not reduce the restitution award. The district court also concluded that Cotton has the ability to pay the full amount of restitution "under a reasonable payment schedule."

Cotton appeals.

## ISSUES

I.      Must a district court reduce a restitution award by the amount of economic loss a crime victim can recoup from a collateral source?

II.     Did the district court err in concluding that the state met its burden to prove the amount and propriety of restitution?

---

fundraisers were started in relation to the crime, how much was collected, and whether the claimant received the funds.

III.    Did the district court err by not including a payment schedule or structure in the second restitution order?

**ANALYSIS**

I.    **Minn. Stat. § 611A.54 does not require a district court to reduce a restitution award by the amount of economic loss a crime victim can recoup from a collateral source.**

Cotton argues that the district court was statutorily required to reduce the amount of restitution by the amount of funds the crime victim's daughter recouped from a collateral source, namely, the proceeds from a GoFundMe campaign. He argues that Minn. Stat. § 611A.54(1) requires the district court to reduce any restitution "to the extent that economic loss is recouped from a collateral source." In response, the state argues that a GoFundMe campaign is not a collateral source as defined in Minn. Stat. § 611A.52, subd. 5, and the district court was not required to offset the restitution award by such funds. But neither party addresses the threshold issue of whether the cited statutes apply to a district court's *restitution* order, which is the order from which this appeal is taken. Even so, "it is the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities." *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) (quotation omitted). We therefore first consider the threshold question of whether the statute invoked by Cotton in this appeal, section 611A.54, applies to a district court's restitution order.

Statutory interpretation presents a question of law that we review de novo. *State v. Jones*, 848 N.W.2d 528, 535 (Minn. 2014). "The aim of statutory analysis is to effectuate

5

the intent of the legislature." *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019) (quotation omitted); *see also* Minn. Stat. § 645.16 (2022). "The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous." *State v. Thonesavanh*, 904 N.W.2d 432, 435 (Minn. 2017). "A statute is ambiguous when its language is subject to more than one reasonable interpretation." *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015). To determine whether statutory language is ambiguous, we may consider the canons of interpretation listed in Minn. Stat. § 645.08 (2022). *See id.* "One such canon provides that 'words and phrases are construed according to rules of grammar and according to their common and approved usage.'" *Id.* (quoting Minn. Stat. § 645.08(1) (2014)).

"The statutory language in dispute is not examined in isolation; rather, all provisions in the statute must be read and interpreted as whole." *Pakhnyuk*, 926 N.W.2d at 920. To the extent that a statute has already been interpreted in caselaw, that "judicial construction of a statute, so long as it is unreversed, is as much a part thereof as if it had been written into it originally." *State v. Noor*, 964 N.W.2d 424, 430 (Minn. 2021) (quotation omitted).

Turning to the statute invoked by Cotton in this appeal, Minn. Stat. § 611A.54 is part of the Minnesota Crime Victims Reparations Act, which sets forth a statutory scheme by which the CVRB may award reparations to crime victims. Minn. Stat. §§ 611A.51-.68. Section 611A.54 is titled "Amount of Reparations" and provides in pertinent part:

> Reparations shall equal economic loss except that:
> (1) reparations shall be reduced to the extent that economic loss is recouped from a collateral source or collateral sources. Where compensation is readily available to a claimant from a collateral source, the claimant must take reasonable

steps to recoup from the collateral source before claiming reparations[.]

Minn. Stat. § 611A.54(1). "[T]he term 'reparations,' as used in Minn. Stat. § 611A.53, is not synonymous with the term 'restitution.'" *Evans v. State*, 880 N.W.2d 357, 360 (Minn. 2016). "Reparations" refers to payments by the CVRB "for qualified economic losses," whereas "restitution" "refers to payments by the defendant to the victim for qualified economic losses." *Id.*

Separately, Minn. Stat. §§ 611A.04, .045 (2022), authorize and set forth the procedure for a district court to order a defendant to pay restitution. "The [district] court, in determining whether to order restitution and the amount of restitution," is required to consider (1) "the amount of economic loss sustained by the victim as a result of the offense" and (2) the defendant's ability to pay based on their "income, resources, and obligations." Minn. Stat. § 611A.045, subd. 1(a). The district court may only consider these two exclusive factors in its determination of the amount of restitution. *Riggs*, 865 N.W.2d at 685.

The CVRB is statutorily directed to consider different factors in determining reparations than the district court considers in determining restitution. Section 611A.54(1) directs that "[r]eparations shall equal economic loss except that . . . reparations shall be . . . reduced to the extent that economic loss is recouped from a collateral source." Further, "[w]here compensation is readily available to a claimant from a collateral source, the claimant must take reasonable steps to recoup from the collateral source before claiming reparations." Minn. Stat. § 611A.54(1). As relevant here, "collateral source" is defined in

7

the Crime Victims Reparations Act as "a source of benefits or advantages for economic loss otherwise reparable under sections 611A.51 to 611A.68 which the victim or claimant has received, or which is readily available to the victim, from . . . any private source as voluntary donation or gift." Minn. Stat. § 611A.52, subd. 5(9); *see id.*, subd. 1 (limiting the meaning of the defined terms to sections 611A.51 to 611A.68). By contrast, neither section 611A.04 nor section 611A.045, which govern a district court's restitution award, reference "collateral sources" as a consideration in determining the amount of restitution.

Thus, the plain language of the statute, statutory scheme, and caselaw define restitution and reparations as distinct forms of relief, and the district court and the CVRB do not consider the same factors for purposes of determining victim compensation. *See also Riggs*, 865 N.W.2d at 685 (recognizing that the legislature expressly included certain factors in the reparations context and omitted them in the restitution context, and relying in part on that difference to conclude that section 611A.045, subdivision 1, provides an exclusive list of factors for the district court's determination of the amount of restitution); *see also State v. Dendy*, 520 N.W.2d 411, 413 (Minn. App. 1994) (stating that the plain text of section 611A.52 limiting its application to the Crime Victims Reparations Act portion of chapter 611A suggests the legislature intentionally excluded some definitions for the purposes of restitution).[4]

---

[4] We note that reparations and restitution also serve different policy objectives. Reparations under chapter 611A "provide[] compensation to crime victims from public revenues." *Dendy*, 520 N.W.2d at 413. Thus, the CVRB's consideration of collateral sources, which may reduce the amount of reparations a crime victim may receive, reflects a concern for "the limited public funds" and for preserving them by ensuring a crime victim is not double compensated through public funds and outside funding. In contrast,

8

We reject Cotton's argument that the district court was required to reduce restitution because the CVRB in its calculation of reparations did not account for collateral sources recouped by the crime victim. The statute provides no such direction. The CVRB is authorized to "request restitution on behalf of a victim by filing a copy of orders of the board, if any, which detail any amounts paid by the board to the victim." Minn. Stat. § 611A.04, subd. 1a. When the CVRB pays reparations and then seeks restitution on behalf of itself and the crime victim, "it steps into the shoes of the victim." *Evans*, 880 N.W.2d at 360-61. Accordingly, when the CVRB requests the district court to order restitution, the district court may only consider the exclusive factors set forth in section 611A.045, subdivision 1(a), in determining the amount of the award—not the factors the CVRB is required to consider, such as collateral sources.

We therefore hold that Minn. Stat. § 611A.54 applies only to the issuance of reparations, not restitution. Cotton's objection to the amount of restitution is limited to the district court's determination of "the amount of economic loss sustained by the victim." *See* Minn. Stat. § 611A.045. We therefore conclude the district court did not err in calculating restitution without consideration of collateral sources that may have been available to or recouped by the crime victim.

---

"restitution is a right" with the dual goals of "victim compensation and offender rehabilitation." *State v. Davis*, 907 N.W.2d 220, 225-26 (Minn. App. 2018), *rev. denied* (Minn. Apr. 17, 2018). As a result, a defendant's "inability to pay restitution cannot extinguish a victim's right to compensation." *Id.* at 226. Further, "because public resources are not involved, restitution can be made available for a broader set of losses" than reparations. *Dendy*, 520 N.W.2d at 413.

**II.    The district court did not err in concluding that the state met its burden to prove the amount and propriety of restitution.**

Cotton argues that the state did not prove that the restitution award was appropriate and that the district court abused its discretion in awarding the full amount of cremation expenses. We construe his argument as asserting that the district court erred in determining the amount of economic loss sustained by the CVRB because the district court should have reduced the amount in light of collateral-source funds that the crime victim received or recouped through the GoFundMe campaign. Because the state met its burden and the district court is not required to consider such funds as part of its determination of economic loss, we disagree.

Keeping in mind that the CVRB "step[ped] into the shoes of the victim" in seeking a restitution order from the district court for reparations the CVRB paid for the benefit of the crime victim, *see Evans*, 880 N.W.2d at 360-61, the defendant bears the initial burden of production in challenging that restitution order and must produce "a detailed sworn affidavit . . . setting forth all challenges to the restitution or items of restitution, and specifying all reasons justifying dollar amounts of restitution which differ from the amounts requested by the victim," Minn. Stat. § 611A.045, subd. 3(a). The district court must resolve "[a] dispute as to the proper amount or type of restitution . . . by the preponderance of the evidence." *Id.* And once a defendant has met their burden of production, "[t]he burden of demonstrating the amount of loss sustained by a victim as a result of the offense and the appropriateness of a particular type of restitution is on the prosecution." *Id.* The "appropriateness of a particular type of restitution" is an inquiry

10

into whether the "request for restitution consists of the type, kind, or categories of expenses that should be compensated through restitution." *State v. Cloutier*, 987 N.W.2d 214, 220 (Minn. 2023). "A request for restitution may include, but is not limited to, any out-of-pocket losses resulting from the crime, including medical and therapy costs . . . and funeral expenses." Minn. Stat. § 611A.04, subd. 1(a).

A district court has broad discretion to award restitution, subject to review for abuse of that discretion. *State v. Tenerelli*, 598 N.W.2d 668, 672 (Minn. 1999). A district court abuses its discretion when its decision is based on an erroneous view of the law. *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011). We review the interpretation of the restitution statute de novo. *State v. Jones*, 678 N.W.2d 1, 23 (Minn. 2004). And "whether an item meets the statutory requirements for restitution is a question of law fully reviewable by the appellate court." *State v. Ramsay*, 789 N.W.2d 513, 517 (Minn. App. 2010) (quotation omitted).

Under Minn. Stat. § 611A.045, subd. 1(a), a district court may only consider two factors in determining the amount of a restitution award. *See Riggs*, 865 N.W.2d at 685. At issue here is "the amount of economic loss sustained by the victim as a result of the offense." Minn. Stat. § 611A.045, subd. 1(a)(1). Although the statute does not define the phrase "amount of economic loss," the supreme court interpreted the phrase "the amount of economic loss sustained by the victim as a result of the offense" to mean "the total or aggregate diminution or deprivation of money, goods, or services that a victim suffers as a direct result or natural consequence of the defendant's crime." *State v. Currin*, 974 N.W.2d 567, 573 (Minn. 2022). This factor requires a district court to "account for any benefits

11

received *from the defendant* to determine the aggregate economic loss." *Id.* (emphasis added).

Applying these definitions, the district court did not err in concluding that the state met its burden to show that the total economic loss of the CVRB was the full amount of reparations it paid the crime victim's daughter. The record shows that the CVRB paid $2,362 in reparations for cremation expenses. This is a funeral expense that should be compensated through restitution. *See Cloutier*, 987 N.W.2d at 220; Minn. Stat. § 611A.04, subd. 1(a). Cotton does not challenge that the crime victim's daughter paid for the cremation expenses or that such an expense is compensable through a restitution award.

Cotton essentially argues that the crime victim's daughter suffered zero aggregate economic loss because the GoFundMe funds were sufficient to cover the cremation expenses and the state did not definitively prove that the crime victim's daughter did not use the GoFundMe funds for the expense. His argument is not persuasive for two reasons. First, the district court was tasked with determining the economic loss of the *CVRB* as the entity requesting restitution. Thus, the GoFundMe funds potentially available to the *crime victim's daughter* are not relevant to the economic loss incurred *by the CVRB*. Second, economic loss in section 611A.045, subdivision 1(a)(1), only considers benefits received *from the defendant*. *Currin*, 974 N.W.2d at 573. Funds from a GoFundMe campaign are a benefit conferred by third-party individuals, not Cotton. Therefore, the district court appropriately did not consider funds from the GoFundMe campaign in determining the "amount of economic loss" under Minn. Stat. § 611A.045, subd. 1(a)(1). *See State v. White*, ___ N.W.2d ___, ___, No. A23-0126, slip op. at *16 (Minn. App. Aug. 28, 2023)

12

(concluding that under section 611A.045, subdivision 1(a), life-insurance proceeds that a murder victim's family receives are not an economic benefit conferred by the defendant and therefore the district court is not required to consider those proceeds in determining the amount of economic loss for purposes of restitution).

We therefore affirm the district court's restitution order representing the full amount that the CVRB paid as reparations to the crime victim's daughter for cremation expenses.

## III. The district court erred by not including a payment schedule or structure in the final restitution order.

Cotton argues, and the state agrees, that the district court failed to establish a payment schedule or structure in its final restitution order as required by statute, and therefore a remand is necessary for the purpose of establishing a payment schedule. We also agree.

Minn. Stat. § 611A.045, subd. 2a, provides that a district court "shall include in every restitution order a provision requiring a payment schedule or structure." "Every" is defined, depending on the context, as "[c]onstituting each and all members of a group without exception," and "[b]eing each of a specified succession of objects or intervals." *The American Heritage Dictionary of the English Language* 616 (5th ed. 2011). We therefore hold that the statute requires a payment schedule or structure in each restitution order issued by a district court.

The district court's restitution order from which this appeal was taken does not include a payment schedule or structure. Accordingly, we remand this matter to the district court for the limited purpose of amending the restitution order to include the required

13

payment schedule or structure. We note that the district court is not required to reopen the record to amend the restitution order.

## DECISION

Minn. Stat. § 611A.54 applies only to the issuance of reparations, not restitution. Minn. Stat. § 611A.54 does not apply when the CVRB seeks restitution from the district court for reparations the CVRB made for the benefit of the crime victim. The statute does not require that a district court consider collateral sources when determining the amount of economic loss for purposes of its restitution order. The district court did not abuse its discretion in determining economic loss without considering collateral sources or by ordering restitution for the full amount of reparations paid by the CVRB for cremation expenses. In addition, Minn. Stat. § 611A.045, subd. 2a, requires a district court to include in every restitution order a payment schedule or structure. The district court erred by not including a payment schedule or structure in its final restitution order, and we remand for the limited purpose of issuing a corrected restitution order that includes a payment schedule or structure.

**Affirmed in part and remanded.**