# BERNARD SILBERSTEIN v. WILLIAM I. PRINCE.[1]

November 27, 1914.

Nos. 19,104—(291).

**Election — validity of ballot.**

Failure to vote for the requisite number of commissioners as required by the Duluth charter establishing a commission form of government, does not vitiate a ballot to such extent that it cannot be counted in canvassing the votes for mayor.

From a decision of the common council of the city of Duluth, acting as a canvassing board after the general municipal election in that city for the election of a mayor and commissioners thereof

[1] Reported in 149 N. W. 653.

held on April 1, 1913, determining that William I. Prince had received 3,132 votes for mayor at that election and was duly elected mayor of that city, Bernard Silberstein, candidate for the office of mayor at that election, appealed to the district court for St. Louis county. The appeal was heard before Cant, J., who made findings and ordered judgment in favor of the contestee Prince. From the judgment entered pursuant to the order for judgment, contestant appealed. Affirmed.

*John B. Richards,* for appellant.
*O. J. Larson* and *Neil E. Beaton,* for respondent.

PHILIP E. BROWN, J.

The parties were rival candidates for the office of mayor of Duluth, at the first election, held April 1, 1913, under the new charter establishing a commission form of government. Contestee was declared elected, whereupon contestant commenced this contest, which, after trial to the court, resulted in findings and judgment confirming contestee's title. Contestant appealed.

The court found that contestee received 3,148 votes, and contestant 3,139; these totals being reached by including 109 votes cast on ballots which failed to designate the requisite number of commissioners, of which 66 were counted for contestee and 43 for contestant. It follows that if these 109 votes be excluded contestant would have a majority of 14, and this he urges should be done; founding his claim on the contention that under the charter the ballots containing them are either totally void or at least not proper to be considered in canvassing the votes for mayor. The relevant charter provisions relied on, with special stress upon the words we have italicized, are as follows:

"Section 41. The clerk shall cause ballots for each general and special election to be prepared, printed and authenticated. The ballots shall contain a complete list of the offices to be filled and the names of the candidates nominated therefor. When the number of candidates is more than three times the number of offices to be filled, the form of ballot shall be substantially as follows:

# GENERAL (OR SPECIAL) MUNICIPAL ELECTION.
## CITY OF DULUTH (INSERTING DATE THEREOF).
### INSTRUCTIONS.

To vote for any person, mark a cross (X) in a square to the right of the name.

Vote your first choice in the first column.

Vote your second choice in second column.

Vote only one first choice and only one second choice for any one office.

Vote in the third column for all the other candidates whom you wish to support.

Do not vote for more than one choice for one person, as only one choice will count for any candidate.

Any distinguishing mark makes the ballot void.

If you wrongly mark, tear or deface this ballot, return it and obtain another from the election officers.

| For Mayor<br>Vote for one first choice | First<br>Choice. | Second<br>Choice. | Additional<br>Choices. |
|---|---|---|---|
| . . . . . . . . . . . . . . . . . . . . . . . . | . . . . . . . . . . | . . . . . . . . . | . . . . . . . . . |
| . . . . . . . . . . . . . . . . . . . . . . . . | . . . . . . . . . . | . . . . . . . . . | . . . . . . . . . |
| For Commissioners<br>*Vote for first choices or ballot will be void.* | | | |
| . . . . . . . . . . . . . . . . . . . . . . . . | . . . . . . . . . . | . . . . . . . . . | . . . . . . . . . |
| . . . . . . . . . . . . . . . . . . . . . . . . | . . . . . . . . . . | . . . . . . . . . | . . . . . . . . . |
| For other officers | | | |
| . . . . . . . . . . . . . . . . . . . . . . . . | . . . . . . . . . . | . . . . . . . . . | . . . . . . . . . |
| . . . . . . . . . . . . . . . . . . . . . . . . | . . . . . . . . . . | . . . . . . . . . | . . . . . . . . . |

(Charter amendments, ordinances or other referendum matters to be voted upon to appear here.)

\*   \*   \*   \*   \* ·   \*   \*   \*   \*   \*   \*

*No votes shall be counted on the election of commissioners unless the votes mark as many first choices as there are commissioners to be elected, and instructions to that effect shall be printed in an appropriate place on the ballot.*

Section 42. All official ballots used at any election shall be identical in form. Space shall be provided on the ballot for charter amendments or other matters to be voted upon at municipal elections. \* \* \*

Section 43. The clerk, at least, ten (10) days before the election shall cause to be printed not less than two thousand (2,000) sample ballots, upon paper of different color but otherwise identical, except numbering, with the ballot to be used at the election, and shall distribute the same to registered voters at his office. Sample ballots shall be posted at the polls on election day.

Section 44. Canvass of Returns and Determination of Results of Elections: \* \* \*

(b) If a ballot contain more than one vote for the same candidate, only the one of such votes highest in rank shall be counted. *All ballots shall be void which do not contain first choice votes for as many candidates for commissioners as there are commissioners to be elected.* If a ballot contain either first or second choice votes in excess of the number of offices to be filled, no vote in the column showing such excess shall be counted.

(c) The foregoing portion of this section shall be printed conspicuously on the tally sheets furnished by the clerk to the election officers."

Contestant argues that the prime purpose of the charter was to compel, in the interest of good government, the electorate to vote for the requisite number of commissioners as the fittest possible governing body, wherefore, by way of penalty for a voter's noncompliance with its directions in this regard, the counting of his ballot cast for mayor is prohibited; the language of the charter being claimed to be so unequivocal as to admit of no other interpreta-

tion, or, in any event, properly susceptible of no other construction without defeating the cardinal object indicated.

This court, in Farrell v. Hicken, 125 Minn. 407, 147 N. W. 815, recently sustained and gave effect to the provisions quoted so far as concerns the counting of votes for commissioners; and, assuming without deciding that no constitutional objections stand in the way of so holding, we will confine ourselves to consideration of the question whether the ruling there made can or, as in effect demanded by contestant, should be extended to votes for mayor, notwithstanding the entailed disfranchisement of many electors as to the head of the ticket. Certainly no court would declare such a drastic result unless imperatively constrained so to do. Our Constitution vests in electors the right to vote for all officers elective by the people, and no one should be deprived thereof upon doubtful construction of election laws. Bloedel v. Cromwell, 104 Minn. 487, 116 N. W. 947. Indeed, it is a rule of universal application that all statutes tending to limit the citizen in the exercise of his right of suffrage must be construed liberally in his favor. 15 Cyc. 281. Hence a literal and isolated reading of the vitiating words, upon which alone, if at all, contestant's position is tenable, cannot be adopted unless there is no other recourse; and that they were not intended so to be taken seems clear upon several considerations: First, the reason for their appearance on the ballot is found in the last paragraph of section 41, quoted and italicized above, which significantly refers only to the counting of ballots "on the election of commissioners," and which likewise furnishes a most persuasive suggestion as to the proper interpretation of the language of section 44, subdivision (b); second, if the radical and far-reaching departure from established usage demanded by contestant were intended, why did not the framers of the charter incorporate such intention as one of the leading features in the instruction to be printed at the head of the ballot provided for by section 41, instead of leaving the voter to be first so apprised by the notation in the form of ballot under the head "For Commissioners?" Finally, reading all sections *in pari materia* together, what would be the effect of contestant's contention upon votes for amendments, ordi-

nances, referendum matters and judicial candidates, all of which may be presented to the voters by the same ballots used in election of commissioners, and the last of which were actually included on the ballots under consideration? Manifestly they would have to be rejected, with the resultant wholesale disfranchisement of voters, merely because they failed, even innocently, to comply with the directions as to voting for commissioners. We are satisfied that no such result was intended. Nor have we overlooked the claim that the mayor is practically "a fifth commissioner;" but giving due weight thereto we are unable to reach the conclusion that the ballots in controversy should not have been counted.

Judgment affirmed.