PRODUCTION CREDIT ASSOCIATION
OF WORTHINGTON, Petitioner,

v.

SPRING WATER DAIRY FARM, INC.,
et al., Respondents.

No. C3–86–667.

Court of Appeals of Minnesota.

Aug. 12, 1986.

Review Granted Oct. 22, 1986.

William A. Moeller, Gislason, Dosland, Hunter & Malecki, New Ulm, for petitioner,

Michael A. Fahey, Chaska, for respondents.

Considered and decided by POPOVICH, C.J., and WOZNIAK and RANDALL, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Petitioner Production Credit Association of Worthington (PCA) seeks extraordinary relief from an April 8 order staying enforcement of a March 31 order which authorized PCA to seize property of Spring Water Dairy. The trial court found respondents are entitled to mediation pursuant to the 1986 Farmer-Lender Mediation Act, 1986 Minn. Laws ch. 398, art. 1, and stayed repossession "for a period of ninety (90) days or until a mediator certifies that one of the parties is acting in bad faith, whichever period shall be less." We deny PCA's petition for prohibition.

## FACTS

Respondents Peter and Lois Henstra are the sole shareholders of Spring Water Dairy Farms, Inc. In January 1984, after Spring Water Dairy had defaulted on re-

payment of a PCA loan, PCA brought suit on the note and sought pre-trial possession pursuant to the claim and delivery statutes. *See* Minn.Stat. § 565.23 (1984). In February 1984, Spring Water Dairy filed a petition in bankruptcy. PCA and the trustee in bankruptcy sought dismissal of that action for the failure of Spring Water Dairy to comply with the requirements for filing a reorganization plan and cash flow statements. The action was involuntarily dismissed by court order in October 1985.

In December 1985, Peter Henstra personally filed a petition in bankruptcy. In February 1986, PCA again sought pre-trial possession of secured property owned by Spring Water Dairy. A hearing on that request was held on March 17.

On March 28, PCA learned the Henstras were shipping crops out of state for sale, although "all crops growing or to be grown by debtor, and the products of all such crops" were affected by PCA security interests. On March 29, PCA obtained a restraining order from the bankruptcy court to prevent respondents from selling, transferring, or encumbering the crops.

On March 31, the State trial court issued an order allowing PCA's claim for pre-trial possession of the collateral and permanently enjoining respondents from disposing of the property. The same day, the bankruptcy court dismissed the petition of Peter Henstra, finding "Mr. Henstra's history of bankruptcy involvement reveals a lack of good faith." The bankruptcy court found the petition "was in bad faith; was without legal basis; and was filed for the sole purpose of frustrating lawful attempts by the Debtor's creditors to realize on their collateral under circumstances of long-standing and substantial default on underlying indebtedness." As a result of the dismissal, the bankruptcy court lost jurisdiction and its March 29 restraining order was *de facto* dissolved.

Respondents immediately demanded mediation and moved the trial court to restrain PCA from repossessing the property pursuant to the March 31 order of the State court authorizing claim and delivery.

A hearing was held on April 3. PCA argued the 1986 Farmer-Lender Mediation Act was inapplicable to proceedings brought before March 22, the effective date of the act, and that respondents were prevented, by reason of bad faith, from demanding mediation.

Peter Henstra testified at the April 3 hearing. He told the court all crops, machinery, and equipment had been "leased" to International Properties Management Corporation of America in early March, right after PCA sought court authorization for pre-trial seizure.

By order on April 8, the trial court stayed seizure of Spring Water Dairy property pending mediation or a mediator's certification of bad faith. The trial court considered PCA's argument that bad faith should bar respondents from requesting mediation. The court found "substantial evidence of such bad faith exists, including a finding of bad faith by the Bankruptcy Court, the selling of crops in the name of a son-in-law, the lease of secured property to International Properties Management Corporation of America for little, if any, consideration, and the moving of personal property to the State of South Dakota." The court noted the Act requires a mediator to make the determination regarding bad faith and stayed seizure.

## ISSUES

1. Did the trial court err in restraining seizure of agricultural property pending mediation where no mediation meeting notice had been received by the creditor?

2. Did the trial court err in finding the determination of bad faith is an issue for the mediator, and not the court?

## ANALYSIS

■ 1. A debtor subject to proceedings to seize agricultural property who has not received a mediation notice "may file a mediation request with the Commission." 1986 Minn. Laws ch. 398, art. 1, § 11, subd. 2(c). We recently held this provision applies to all covered debtors, even if proceed-

ings were begun before the effective date of the Act. *Laue v. Production Credit Association,* 390 N.W.2d 823, (Minn.Ct. App. July 22, 1986).

Within ten days after receiving a mediation request, the director of the Agricultural Extension Service or his designee must send mediation meeting notices to the debtor and all known creditors. An initial meeting must be held within twenty days of that notice. 1986 Minn. Laws ch. 398, art. 1 § 11, subd. 4(a)(b). Once "a creditor receives a mediation meeting notice under subdivision 4 the creditor * * * *may not continue proceedings* * * *". Time periods under and affecting [collection remedies] stop running until (1) 90 days after the conclusion of mediation, or (2) a mediation agreement is reached." *Id.,* subd. 5(a) (emphasis added).

After the Act became effective on March 22, there was a delay as county extension agents, who were designated by the director of the Agricultural Extension Service to administer the program, were instructed on their responsibilities under the Act and appropriate forms were printed. Respondents served notice of their demand for mediation on PCA on March 31 and April 2, but no mediation meeting notice had been sent out by April 3, when respondents asked the trial court to stay further proceedings.

Prohibition will "restrain the enforcement of orders entered in abuse of the lower court's discretion." *Hancock-Nelson Mercantile Company, Inc. v. Weisman,* 340 N.W.2d 866, 870 (Minn.Ct.App.1983). However, we cannot agree with PCA that the trial court abused its discretion in this case. By its terms, the Act applies to debtors already subject to proceedings brought by a creditor. *See* 1986 Minn. Laws ch. 398, art. 1, § 11, subd. 2(c). Although mediation meetings must be promptly scheduled, it is inevitable that some debtors will find themselves subject to court orders permitting seizure of agricultural property or other creditor remedies, while simultaneously awaiting the creditor's receipt of a mediation meeting notice which will stay all further proceedings.

Since meeting notices were required to be sent by April 10 at the latest (10 days from the March 31 demand for mediation), and receipt of notice by the PCA would have *automatically* stayed proceedings, we do not agree the trial court's imposition of a stay on April 8 constitutes an abuse of discretion.

■ 2. PCA argues respondents are foreclosed, by their prior conduct, from demanding mediation. PCA cites substantial evidence that respondents have acted in bad faith and argues that Peter Henstra's own testimony that all secured property has been "leased" or moved out of state compels the conclusion that nothing remains to mediate.

The duties of the mediator include attempting "to arrive at an agreement to fairly adjust, refinance, or pay the debts" and assisting the parties in "attempt[ing] to arrive at an agreement * * * for the future conduct of financial relations among them." *Id.,* subd. 6(4)–(5). The trial court thought it "unlikely that any mediation can be successful unless [respondents] take action to undo previous actions taken for the purpose of defeating [PCA's] security [interests]." Whether the mediation will prove fruitful remains to be seen. However, respondents' past conduct does not lessen the need for an agreement to repay the substantial loans owed to PCA and to govern the parties' future financial relations.

The fact that mediation may be unsuccessful in obtaining an agreement for respondents to repay their debts is not controlling. An analogy may be made to arbitration proceedings.

> An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown.

Minn.Stat. § 572.09(e) (1984). This section "says that a party should not be precluded

from seeking arbitration simply because that party's position on the dispute to be arbitrated is without merit or is not in good faith." *Brothers Jurewicz, Inc. v. Atari, Inc.*, 296 N.W.2d 422, 426 n. 3 (Minn.1980). Similarly, respondents' position during mediation may not be meritorious, but the statute affords them an opportunity to mediate in good faith.

The parties are obligated to "engage in mediation in good faith." 1986 Minn. Laws ch. 398, art. 1, § 12, subd. 1. The statute does not explicitly impose an obligation of good faith upon the debtor's *demand* for mediation, but only upon *participation* in mediation. "If the mediator determines that either party is not participating in good faith * * * the mediator shall file an affidavit indicating the reasons for the finding * * *." *Id.*, subd. 2. Upon receipt of such an affidavit finding a debtor's lack of good faith, "[a] creditor may immediately proceed with creditor's remedies * * *." *Id.*, subd. 4.

The trial court's order in this case specified the proceedings are stayed for 90 days "or until a mediator certifies that one of the parties is acting in bad faith, whichever period shall be less." The trial court applied the clear language of the statute, leaving the issue of bad faith for the mediator, and we cannot agree with PCA that prohibition is appropriate. The trial court did not exceed its authority and PCA's remedy is to seek a finding of bad faith from the mediator, if respondents fail to mediate in good faith as required by law.

### DECISION

The trial court did not err in restraining seizure of agricultural property pending mediation.

Petition for prohibition denied.