PRODUCTION CREDIT ASSOCIATION
OF WORTHINGTON, Petitioner,
Appellant,

v.

SPRING WATER DAIRY FARM, INC.,
et al., Respondents.

No. C3-86-667.

Supreme Court of Minnesota.

June 5, 1987.

Robert Halvorson, New Ulm, for appellant.

Michael Fahey, Chaska, for respondents.

COYNE, Justice.

This appeal arises out of a claim and delivery (replevin) action to foreclose on personal property which secured a debt. The district court granted Production Cred-

it Association of Worthington (PCA) the right to possession of the property, but then stayed its order to permit mediation under Minn.Stat. § 583.26 (1986). PCA petitioned the court of appeals, seeking a writ of prohibition. The court of appeals denied the petition. *Production Credit Association v. Spring Water Dairy Farm, Inc.,* 392 N.W.2d 15 (Minn.App.1986). We accepted review in order to examine PCA's contention that mandatory mediation under the Farmer-Lender Mediation Act is not required when a creditor has begun its claim and delivery action before the effective date of the act. We affirm.

PCA, a corporation operating under the Farm Credit Act of 1971, and Spring Water Dairy Farm, Inc., a family farm corporation as defined in Minn.Stat. § 500.24, subd. 2 (1986), entered into a series of loan transactions. The debt was secured by perfected security interests in various kinds of property, including farm machinery and equipment, vehicles, crops, warehouse receipts and accounts from the disposition of collateral. In addition, Peter and Lois Henstra, the principal shareholders of Spring Water Dairy Farm, Inc., guaranteed payment of the corporate debt. Spring Water Dairy and the Henstras defaulted on the loan, the entire balance of which was due on September 30, 1982.

In January of 1984, PCA commenced a claim and delivery (replevin) action against Spring Water Dairy and the Henstras. Spring Water Dairy then filed a petition for bankruptcy pursuant to 11 U.S.C. ch. 11 (Supp.1985), which was dismissed on Octo-

ber 28, 1985.[1] In December of 1985 PCA reinstituted its claim and delivery action. Peter Henstra promptly filed a petition for bankruptcy pursuant to 11 U.S.C. ch. 13 (Supp.1985).

During the pendency of the chapter 13 bankruptcy proceedings PCA sought an order in its replevin action for immediate possession of the property securing the Spring Water Dairy debt. On March 31, 1986, Henstra's bankruptcy petition was dismissed. Noting the failure of the earlier chapter 11 proceeding,[2] the bankruptcy court declared that the filing of the chapter 13 case was in bad faith and brought "for the sole purpose of frustrating lawful attempts by [Henstra's] creditors to realize on their collateral under circumstances of long-standing and substantial default on underlying indebtedness." The bankruptcy court also castigated PCA for proceeding with its replevin action in violation of the automatic stay on debt enforcement invoked by the filing of the bankruptcy petition. 11 U.S.C. § 362(a). *In re Peter Henstra, Debtor,* 75 B.R. 260, (Bankr.D. Minn., 1986). On that same date the state district court granted PCA the right to possession of its personal property security, effective April 3, 1986, and permanently enjoined defendants and others from disposing of any Spring Water Dairy property in which PCA held a valid security interest.[3] Defendants immediately served a "borrower's request for mediation," notifying PCA that defendants demanded mediation pursuant to Minn.Stat. § 583.26, subd. 2(c), which

1. While the chapter 11 proceeding was pending Lois and Peter Henstra sued PCA and others in the United States District Court, alleging malfeasance, nonfeasance, negligence, breach of contract, violations of constitutional rights and violations of the Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.* (Supp.1985); the Securities Act of 1933, 15 U.S.C. § 77A, *et seq.* (Supp.1985); the Securities and Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* (Supp.1985); the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq.* (1982); the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (1982); and the Civil Rights Act, 42 U.S.C. ch. 21 (Supp.1985), and seeking relief under the Farm Credit Act of 1971, 12 U.S.C. § 2001 *et seq.* (Supp.1985). That action was dismissed on January 3, 1986.

2. The bankruptcy court observed that in the chapter 11 proceeding Henstra had consistently characterized the ownership of property as corporate or personal to suit his purposes of the moment and had failed to accurately disclose corporately owned property.

3. PCA had represented that Henstra had attempted to sell part of the Spring Water Dairy soybean crop in South Dakota under the name of International Property Management Corporation of America and that PCA believed Henstra had attempted to sell part of the crop at the Cargill terminal in Sioux City, Iowa.

had become effective on March 22, 1986. Act of March 21, 1986, ch. 398, art. 1, § 19, 1986 Minn.Laws 400, 411. On April 8, 1986, the district court stayed enforcement of the order granting PCA possession of its collateral for 90 days, or until a mediator certified that one of the parties acted in bad faith, if that should occur earlier, so that mediation could be had in accordance with the statute.

Following its earlier decision in *Laue v. Production Credit Association*, 390 N.W.2d 823 (Minn.App.1986), the court of appeals denied PCA's petition for extraordinary relief from the stay of the order authorizing PCA to seize Spring Water Dairy's property. For the reasons set out below, that denial does not constitute an abuse of discretion.

PCA contends, first, that to require mediation before permitting a replevin or claim and delivery action pending on March 22, 1986, the effective date of Minn.Stat. §§ 583.20–.32 (1986) is to give the Farmer-Lender Mediation Act retroactive effect.

■ Minn.Stat. § 583.26, subd. 1, requires a creditor who wishes to start any one of several kinds of proceedings to enforce a debt against agricultural property to serve a mediation notice on the debtor and on the director of the agricultural extension service or his nominee. The creditor may not begin the proceeding until the parties have completed mediation, except as otherwise provided in the Act. A debtor who fails to respond by filing a mediation request with the director within 14 days after receipt of the notice waives the right to mediation under the Act, and the creditor may then proceed against the agricultural property. Minn.Stat. § 583.26, subd. 2(a) and (b). Both parties, however, seize on subdivision 2(c) of section 583.26 as authority for their respective positions. Subdivision 2(c) provides:

> If a debtor has not received a mediation notice and is subject to a proceeding of a creditor enforcing a debt against agricultural property * * * the debtor may file a mediation request with the director. The mediation request form must indi-

cate that the debtor has not received a mediation notice.

PCA bases its argument on what it conceives as the overall plan of section 583.26, contending that subdivision 2(c) does not stand alone but is part of a sequence that begins before the commencement of a proceeding with the subdivision 1 requirement that "[a] creditor desiring to start a proceeding" serve a mediation notice. The arrangement of a statute may be a persuasive indicator of legislative intent. *State v. Consol. Freightways Corp.*, 72 Wis.2d 727, 242 N.W.2d 192 (1976); *Silberstein v. Prince*, 127 Minn. 411, 149 N.W. 653 (1914). PCA's concept of the overall plan of section 583.26 seems, however, to begin and end with a time frame that starts before the commencement of debt enforcement proceedings. Not only does the argument limit a section which sets out a comprehensive format for mandatory mediation to a strict chronology, but it fails to take account of the other sections of the Farmer-Lender Mediation Act and of the other parts of section 583.26 as well.

■ While subdivision 1 contemplates future action, subdivision 2(c) is in the present tense—"If a debtor * * * *is* subject to a proceeding of a creditor" (emphasis supplied)—and sets out a procedure by which a debtor can initiate mediation. Like subdivision 2(c), subdivision 5(a) and 5(b) refer to pending proceedings: a creditor who receives a mediation meeting notice "may not continue proceedings," and "[t]ime periods under and affecting those procedures stop running" until after mediation is concluded.

We are of the opinion that the pending procedures to which subdivisions 2 and 5 refer include those pending at the effective date of the Farmer-Lender Mediation Act as well as those procedures subsequently instituted without prior service of a mediation notice. Dismissal is the customary remedy when an action is commenced in violation of a statute. Had the legislature intended to make mediation mandatory only with respect to proceedings initiated subsequent to the effective date of the act, subdivisions 2(c), 5(a), and 5(b) would have

been unnecessary. Since service of a mediation notice is prerequisite to the commencement of a proceeding to enforce a debt, a debtor served with a summons and complaint but not with a mediation notice could obtain a dismissal of the action without specific statutory provision for dismissal. The intention to permit the debtor subject to a proceeding pending on the effective date of the Act to demand mediation seems the rational purpose for the inclusion of these provisions.

■ Furthermore, the legislative findings set out as a sort of preamble to the Farmer-Lender Mediation Act, Minn.Stat. § 583.21 (1986), support this position. Legislative findings are given some weight in the interpretation of statutes. *Bricelyn School Dist. No. 132 v. Board of County Comm'rs,* 238 Minn. 53, 55 N.W.2d 597 (1952); Minn.Stat. § 645.16 (1986). Here the legislature expressed concern about the severe financial stress to which the agricultural sector is subjected:

> Thousands of this state's farmers are unable to meet current payments of interest and principal payable on mortgages and other loan and land contracts and are threatened with the loss of their farmland, equipment, crops, and livestock through mortgage and lien foreclosures, cancellation of contracts for deed, and other collection actions. The agricultural economic emergency requires an orderly process with state assistance to adjust agricultural indebtedness to prevent civil unrest and to preserve the general welfare and fiscal integrity of the state.

Minn.Stat. § 583.21. Those findings are as applicable to farmers subject to debt collection proceedings which were pending on March 22, 1986, as to farmers against whom such proceedings were instituted on March 23. The threat of loss of farmland, equipment, crops, and livestock is just as real, and somewhat more imminent, where proceedings to enforce the debt were already underway on March 22, 1986, and the necessity for orderly process is equally present.

Finally, we do not regard permitting a debtor to invoke mandatory mediation before the creditor takes possession of agricultural property as retroactive application of the Act even though debt enforcement proceedings were underway before the effective date of the Act. It is simply recognition of a legislative intendment to halt the process before agricultural property changes hands and to maintain the parties in their present respective positions until they have had an opportunity to adjust the indebtedness by mediation.

■ PCA also contends that the district court should have ruled, as a matter of law, that the defendants' conduct prior to their demand for mediation constituted bad faith which deprived them of any right to mediation. The trial court found substantial evidence of bad faith but quite correctly observed that the Act requires that a finding of bad faith be made by the mediator, not by the district court. Minn.Stat. § 583.27, subd. 1 (1986), requires the parties to engage in mediation in good faith and describes kinds of conduct which do not show good faith. All of the described misconduct is related in some way to the mediation process or to the mediation period. If the mediator finds that the creditor has not participated in mediation in good faith, as good faith is defined in the Act, the debtor may require court supervised mandatory mediation with continued suspension of the creditor's remedies. If the court finds that the creditor has not participated in mediation in good faith, the creditor's remedies may be suspended for an additional period of 180 days. Minn.Stat. § 583.27, subds. 2 and 3. If the mediator finds that the debtor has not participated in good faith, the creditor may immediately proceed with the creditor's remedies. Minn.Stat. § 583.27, subd. 4.

It is apparent that the good faith requirement is intended to insure good faith participation in the mandatory mediation process without regard to the prior conduct unless that prior conduct has placed the actor in such a position that the actor cannot participate in mediation in good faith. But mediation is mandatory and it is the

failure of the mediation process because of bad faith that justifies the mediator's determination of bad faith and invocation of the remedies provided by the Act.

Affirmed.