CHUTICH, Justice.
This appeal raises two issues. First, we must determine whether a defendant forfeits a challenge to the sufficiency of the evidence that is based on a statutory interpretation argument when he fails to raise it in the district court. We conclude that the forfeiture rule does not apply to such a challenge.
Second, we consider how to apply the intent element in subdivision 1(a) of Minnesota's criminal interference-with-privacy statute, Minn. Stat. § 609.746 (2018). Specifically, we must determine whether a criminal defendant charged with interference with privacy under subdivision 1(a)
*917 must have a specific "intent to intrude upon or interfere with" the victim's privacy when he enters the property of another, or if it is sufficient that the State prove this intent only when he "gazes, stares, or peeps" through the victim's window. See id. We agree with the court of appeals that, on this question, the statute is ambiguous. See State v. Pakhnyuk , 906 N.W.2d 571, 578 (Minn. App. 2018). We also agree that the principles of statutory construction compel a conclusion that the specific intent requirement applies only to the act of "gaz[ing], star[ing], or peep[ing]" through the victim's window. See Minn. Stat. § 609.746, subd. 1(a)(2) ; Pakhnyuk , 906 N.W.2d at 581. Accordingly, we affirm the decision of the court of appeals.
FACTS
In July 2012, appellant Fedor Pakhnyuk, a resident of Chicago, Illinois, visited Minnesota to help his brother with some work. Pakhnyuk stayed with his brother and his family at their home in Shakopee.
During Pakhnyuk's stay, his niece had three friends over for a sleepover. The niece was 14 years old, and her friends were of similar age. Pakhnyuk, then age 38, had been drinking at the house that evening, and he gave beer to the four girls. As the evening progressed, Pakhnyuk made several crude sexual remarks to the girls and convinced them to watch a movie together. As they watched, Pakhnyuk sat beside one of the friends and placed a blanket over both of their laps, reached under the blanket, and touched the friend's inner thigh. Offended by Pakhnyuk's advances, the girls went upstairs to the niece's bedroom for the rest of the evening.
Five days later, Pakhnyuk, his niece, and one of the niece's same friends were still staying at the house. During the evening, the friend went to the kitchen to get some water. To return to the niece's bedroom, she had to walk through the living room where Pakhnyuk was sleeping on the floor. As she passed, he stood up, hugged her, grabbed her buttocks, and said, "Do you miss me?" She pushed Pakhnyuk off, ran upstairs to the niece's bedroom, and locked the door.
The two girls were changing clothes in the niece's bedroom later that evening to get ready for bed. The friend looked out the window as she was undressing and saw Pakhnyuk sitting on the roof outside, staring at her. When she screamed, Pakhnyuk climbed down from the roof. Eventually, Pakhnyuk was confronted by his brother, who contacted the authorities.
Pakhnyuk was charged with interference with privacy against a minor, Minn. Stat. § 609.746, subd. (1)(e)(2), furnishing alcohol to a person under the age of 21, Minn. Stat. § 340A.503, subd. 2(1) (2018), and disorderly conduct, Minn. Stat. § 609.72, subd. 1(3) (2018). Pakhnyuk pleaded not guilty and demanded a jury trial. At trial, Pakhnyuk argued he did not act with a specific intent to interfere with privacy. The jury found Pakhnyuk guilty of all three charges.
Pakhnyuk appealed his conviction for interference with privacy, arguing for the first time that the evidence was insufficient because the language of Minnesota Statutes section 609.746, subdivision 1(a), required the State to prove that when Pakhnyuk entered his brother's property, he had the specific intent "to intrude upon or interfere with" the privacy of another person. The State contended that Pakhnyuk forfeited his statutory interpretation argument because he did not raise it in the district court. In the alternative, the State asserted that subdivision 1(a) only required it to prove that Pakhnyuk possessed the specific intent to interfere with privacy when he peeped through his niece's bedroom window.
*918 A panel of the court of appeals held that Pakhnyuk did not forfeit his statutory interpretation argument when he failed to raise it in the district court. Pakhnyuk , 906 N.W.2d at 575. The court then rejected Pakhnyuk's statutory interpretation argument and affirmed his conviction, with one judge dissenting. See id. at 581. The court of appeals concluded that the statute was ambiguous because it was susceptible to more than one reasonable interpretation. Id. at 578. The court relied upon an earlier version of the statute, which the court believed showed that the Legislature did not intend to require the specific intent to "intrude upon, or interfere with" the privacy of another to apply to the element of entering another's property. See id. at 578-79. Because the Legislature made only modest revisions when adopting the current version of the statute, the court determined that reading the statute to require the intent element to apply only to the act of peeping through a window better reflected the Legislature's intent to protect individual privacy. Id. at 579-81. The dissent argued, on the contrary, that the statute was "so grievously ambiguous" that its meaning "must be determined by the rule of lenity." Id. at 585 (Johnson, J., dissenting). Given that the State introduced no evidence of Pakhnyuk's intent to intrude when he entered his brother's property, the dissent would have reversed his conviction. Id. at 586.
Pakhnyuk petitioned for review. The State cross-petitioned for review of the holding of the court of appeals that Pakhnyuk did not forfeit his statutory interpretation argument when he first raised it on appeal. We granted both petitions.
ANALYSIS
I.
Pakhnyuk argues that the language of Minnesota Statutes section 609.746, subdivision 1(a), requires the State to prove that when Pakhnyuk entered his brother's property, he had the specific intent "to intrude upon or interfere with" the privacy of another person. Asserting that the State did not present any evidence on this element, Pakhnyuk argues that the evidence is insufficient to support his conviction for interference with privacy. The State contends, however, that Pakhnyuk forfeited his statutory interpretation argument when he failed to raise it in the district court. Before considering the merits of Pakhnyuk's statutory interpretation argument, therefore, we must first address whether his argument is properly before our court.
As a general rule, an error in the district court can be forfeited on appeal by the failure to make a timely objection in the district court, even when the error affects the defendant's constitutional rights. State v. Osborne , 715 N.W.2d 436, 441 (Minn. 2006). Whether the forfeiture rule applies here presents a question of appellate procedure that we review de novo. Crowley v. Meyer , 897 N.W.2d 288, 292 (Minn. 2017). Although we have applied our forfeiture doctrine to claims of prosecutorial misconduct, erroneous jury instructions, evidentiary rulings, responses to jury questions, and sentencing decisions, see Osborne , 715 N.W.2d at 441 (listing examples), the parties have identified no case that applies the doctrine to sufficiency-of-the-evidence challenges. We decline to apply our forfeiture rule here for three reasons.
First, a key difference exists between our review of a sufficiency-of-the-evidence claim and our review of the issues that are generally subject to forfeiture. The issues that we have recognized may be *919 forfeited, see id. , concern how guilt was proven in a particular case. A claim that the State's evidence was insufficient to support the conviction, however, concerns whether guilt was proven at all. A primary purpose of the forfeiture rule is to encourage contemporaneous objections that allow the district court to correct problems when they occur. See, e.g. , Rairdon v. State , 557 N.W.2d 318, 323 n.5 (Minn. 1996). A defendant who challenges the sufficiency of the evidence presented at trial, however, raises essentially the same argument on appeal that he presented to the jury at trial: that he was not guilty of a crime.
Second, a defendant's challenge on appeal to the sufficiency of the evidence, on the grounds that the statute included an element that the State failed to prove, raises due-process concerns. Due process requires that the State bear the burden of proving beyond a reasonable doubt every element of a charged offense in a criminal trial. State v. Struzyk , 869 N.W.2d 280, 289 (Minn. 2015). When the State prosecutes a person for violating a criminal statute, it bears the burden of establishing that the defendant has committed an act bringing him within the criminal statute. See Johnson v. Florida , 391 U.S. 596, 598, 88 S.Ct. 1713, 20 L.Ed.2d 838 (1968) (per curiam) ("The burden ... is on the State to prove that an accused has committed an act bringing him within a criminal statute."); State v. Vasko , 889 N.W.2d 551, 556 (Minn. 2017) ("[T]he meaning of a criminal statute is intertwined with the issue of whether the State proved beyond a reasonable doubt that the defendant violated the statute....").
The harsh consequences of the forfeiture rule could threaten this due-process protection when the proper interpretation of the language of a criminal statute is in question. If the State's forfeiture argument prevailed, a defendant who failed to raise his statutory interpretation argument at trial would stand convicted of a crime-even if the defendant were correct that the language of the statute required the State to prove an element that was unproven in the defendant's case. A defendant's due-process interests are better protected by a rule that allows him to challenge the sufficiency of the State's evidence based on a statutory interpretation argument that is raised for the first time on appeal.[1]
Finally, this rule is not unfair to the State. The State contends otherwise, asserting that it would be inequitable to permit review here because the State is bound by the record that it created under the "old" interpretation of the interference-with-privacy statute. Because no appellate court had decided the precise issue of when specific intent under the interference-with-privacy statute must arise-when the defendant enters the property of another or when he peeps into a dwelling of another-the State's argument is unavailing in this case.
As discussed in more detail below, the language of section 609.746, subdivision 1(a), is ambiguous. Despite this ambiguity, the State chose to present evidence that focused on Pakhnyuk's specific intent at the time of peeping, as opposed to the time of entering. Nor did the State seek to litigate in the district court the issue of whether the statute required specific intent when the defendant enters the property *920 of another. Holding the State accountable for the consequences of its choices is not unfair. Accordingly, we hold that a defendant like Pakhnyuk does not forfeit a sufficiency-of-the-evidence challenge that is based on a statutory interpretation argument when he fails to raise it in the district court.
II.
Having concluded that Pakhnyuk's statutory challenge may proceed, we consider the merits of his claim that the State failed to prove an element of the charge of interference with privacy. Pakhnyuk challenges his conviction under subdivision 1(a) by asserting that the statute requires the State to prove that he had an intent to intrude upon the victim's privacy when he entered his brother's property, and not just when, from his perch on the roof, he peeped at the girls undressing.
A sufficiency-of-the-evidence claim that turns on the meaning of the statute under which a defendant has been convicted presents a question of statutory interpretation that we review de novo. State v. Henderson , 907 N.W.2d 623, 625 (Minn. 2018). The aim of statutory analysis is to "effectuate the intent of the legislature." State v. Riggs , 865 N.W.2d 679, 682 (Minn. 2015) (citations omitted) (internal quotation marks omitted).
When interpreting a statute, the first question is whether the language of a statute is ambiguous. Id ."The plain language of the statute controls when the meaning of the statute is unambiguous." State v. Boecker , 893 N.W.2d 348, 351 (Minn. 2017). To determine the plain meaning of a statute, the words and phrases in the statute " 'are construed according to rules of grammar and according to their common and approved usage.' " Riggs , 865 N.W.2d at 682 (quoting Minn. Stat. § 645.08(1) (2018) ). The statutory language in dispute is not examined in isolation; rather, all provisions in the statute must be read and interpreted as whole. Id. at 683. The Legislature is presumed to intend that "the entire statute ... be effective and certain." Minn. Stat. § 645.17(2) (2018). If, after considering these principles, we conclude that the statute is " 'subject to more than one reasonable interpretation,' " then it is ambiguous, and we "may apply canons of construction to resolve the ambiguity." State v. Thonesavanh , 904 N.W.2d 432, 435 (Minn. 2017) (quoting 500, LLC v. City of Minneapolis , 837 N.W.2d 287, 290 (Minn. 2013) ); see also Minn. Stat. § 645.16 (2018).
A.
Pakhnyuk was convicted of interference with privacy under Minnesota Statutes section 609.746, subdivision 1(e)(2), which incorporates the elements of subdivision 1(a). Subdivision 1(a) sets forth the three elements of interference with privacy in numbered clauses, each separated by a semicolon and a line break. It provides:
A person is guilty of a gross misdemeanor who:
(1) enters upon another's property;
(2) surreptitiously gazes, stares, or peeps in the window or any other aperture of a house or place of dwelling of another; and
(3) does so with the intent to intrude upon or interfere with the privacy of a member of the household.
Id. Interference with privacy is a felony if a person's unlawful conduct is directed "against a minor under the age of 18, knowing or having reason to know that the minor is present." Minn. Stat. § 609.746, subd. 1(e)(2).
The crux of this dispute is whether the phrase "does so" in clause (3) requires that an intent to intrude upon privacy *921 be present for each of the acts set forth in clauses (1) and (2): the "entry" element (clause (1)) and the "peeping" element (clause (2)). Pakhnyuk argues that the intent set forth in clause (3) unambiguously applies to both clauses; accordingly, he asserts that, to convict him, the State must prove that he intended to intrude on the victim's privacy, both at the moment he entered his brother's property and when he peeped at the victim through his niece's bedroom window. The State, by contrast, contends that "does so" unambiguously refers only to the peeping element in clause (2). After analyzing the statute's text, structure, punctuation, and the parties' grammatical arguments, we conclude that the intent requirement in subdivision 1(a) is subject to more than one reasonable interpretation and is therefore ambiguous.
As a threshold matter, the meaning of the phrase "does so" alone is not helpful in resolving to which acts the intent element applies. Here, "does so" means in the manner described , that is, in the manner set forth in the text appearing before the phrase. See So, The American Heritage Dictionary 1660 (5th ed. 2011) (seventh entry) (defining "so" as "[i]n the condition or manner expressed or indicated"); So , Webster's Third New International Dictionary 2160 (2002) (fourth entry) (defining "so" as meaning "such as has been specified or suggested"). The phrase simply refers the reader to the conduct described in the words that precede that phrase.
For "does so" to resolve our inquiry, it must tell the reader to which words it refers: those in clauses (1) and (2), or those in clause (2) alone. On that question, the meaning of "does so" provides no direction as to which of the parties' interpretations of subdivision 1(a) is reasonable.
To show that their respective reading of subdivision 1(a) is the more reasonable, the parties analyze the structure of the subdivision and offer two competing rules of grammar. Pakhnyuk quotes a Supreme Court case stating that "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." P.R. Ry., Light & Power Co. v. Mor , 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920). He notes that this principle mirrors the "series-qualifier canon," as described by a noted secondary authority: "When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012). In addition to his grammatical argument, Pakhnyuk contends that if the Legislature desired to apply the intent element of clause (3) solely to clause (2) (peeping), it would have combined clauses (2) and (3) into a single clause or used the phrase "does the act described in clause (2)" instead of "does so" in clause (3).
The State, on the other hand, asserts that the "last-antecedent rule" is more appropriate. According to that rule, a concluding modifier in a series applies only to the nearest reasonable element in the series, rather than to every element in the series. See, e.g. , Woodhall v. State , 738 N.W.2d 357, 362 (Minn. 2007) (noting that "a limiting clause or phrase should ordinarily [be] read as modifying only the noun or phrase that it immediately follows" (citation omitted)).
We conclude that neither of these grammatical rules resolves the ambiguity present in subdivision 1(a). Whether these grammatical conventions are classified as a *922 "rule" or a "canon,"[2] neither trumps the text of the statute, and both can be defeated by other indicia of meaning, including competing canons. See, e.g. , In re Estate of Butler , 803 N.W.2d 393, 397 (Minn. 2011) (recognizing that the last-antecedent rule " 'is not an absolute and can assuredly be overcome by other indicia of meaning' " (quoting Barnhart v. Thomas , 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) )); Scalia & Garner, Reading Law , supra , at 150 ("Perhaps more than most of the other canons, [the series-qualifier canon] is highly sensitive to context.... [L]ike other canons ..., it is subject to defeasance by the other canons."). At bottom, grammatical rules of interpretation-or construction-are only helpful when the language of the law reflects "the ordinary way that people speak and listen, write and read." Lockhart v. United States , --- U.S. ----, 136 S.Ct. 958, 970, 194 L.Ed.2d 48 (2016) (Kagan, J., dissenting); see also Minn. Stat. § 645.08(1) (directing, generally, that statutory words and phrases be construed "according to their common and approved usage").
Consideration of the text and structure of subdivision 1(a) shows that it is no ordinary sentence. Although styled as a single sentence, that sentence is interrupted by a colon, three semicolons, three line breaks, and three clause numbers set off in parentheses. See Minn. Stat. § 609.746, subd. 1(a). The peeping element itself contains a list of verbs-"gazes, stares, or peeps"-that is modified twice, first by the word "surreptitiously" and then by the phrase "in the window or any other aperture of a house or place of dwelling of another." Id ., subd. 1(a)(2).
This divided structure, with three clauses separated by semicolons, suggests that the last-antecedent rule is not helpful in ascertaining the meaning of subdivision 1(a). Cf. Prod. Credit Ass'n of Worthington v. Spring Water Dairy Farm, Inc. , 407 N.W.2d 88, 90 (Minn. 1987) (noting that it is proper to consider the arrangement of a statute when determining the Legislature's intent). We have previously stated that "a comma [that] separates the qualifying phrase from both of the antecedent phrases" may make the last-antecedent rule inapplicable because it "provides some '[e]vidence that [the] qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one.' " Butler , 803 N.W.2d at 397-98 (quoting 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47.33 (7th ed. 2007)) (alterations in original).
Here, the qualifying phrase "does so with intent to intrude" is separated from both the preceding phrases "enters" (clause (1)) and "peeps" (clause (2)) by semicolons, line breaks, and the word "and." Because semicolons provide a more pronounced break than commas, see Bryan A. Garner, Garner's Dictionary of Legal Usage 734 (3d. ed. 2011) (entry for "Punctuation-Semicolon [;]"), no apparent rationale exists to treat these semicolons differently than a comma-indicated separation. Cf. Office of the Revisor of Statutes, Minn. Revisor's Manual 316 (2013) (stating that "[w]hen elements in a series include internal *923 punctuation, or when they are very long and complex, they may need to be separated by semicolons rather than commas for clarity"). Accordingly, when clauses in a statute are separated by semicolons and line breaks, it can "signify that the [modifying clause] modifies all that goes before." City of Oronoco v. Fitzpatrick Real Estate, LLC , 883 N.W.2d 592, 595 (Minn. 2016). Viewed in this way, it is reasonable to conclude that the list-structure of subdivision 1(a) favors Pakhnyuk's reading of the statute.[3]
On the other hand, we are not persuaded by Pakhnyuk's contention that the series-qualifier canon carries the day. The three numbered clauses, broken up by line spaces and semicolons, bear little resemblance to a "straightforward, parallel construction that involves all nouns or verbs in a series." Scalia & Garner, Reading Law , supra , at 147. The examples given of the series-qualifier canon in Reading Law , for instance, are all relatively short phrases, such as "[c]haritable institution or societies," "[i]nternal personnel rules and practices of an agency," "[i]ntoxicating bitters or beverage," and so forth. Id. at 147-48. Subdivision 1(a) does not resemble these straightforward phrases. Given the provision's divided structure, Pakhnyuk's view that the specific-intent element reaches across these textual barriers to apply to the property-entry element "stretches the modifier too far." Jama v. Immigration & Customs Enf't , 543 U.S. 335, 342, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005).
Even more importantly, the text of clauses (1) and (2) suggests that they have geographic and temporal meanings that would make application of the series-qualifier canon inappropriate. For example, clause (1) (entry) can be understood as setting out where the crime of peeping may occur. By stating that it must take place on "another's property," the statute prevents those who are on public sidewalks or streets from being charged with a crime, even when they "surreptitiously gaze[ ], stare[ ], or peep[ ]" in the window of the house.
Reading clause (1) of subdivision 1(a) as focusing on the location from where the peeping takes place, and not the act of entering, is consistent with subdivision 1(c) and 1(d). See Riggs , 865 N.W.2d at 683 (stating that statutory language is not to be examined in isolation). Subdivision 1(c) makes it a crime to peep through a window or aperture of a hotel room, tanning booth, or other similarly private place. Subdivision 1(d) makes it a crime to use a "device for observing, photographing, recording, amplifying, or broadcasting sounds or events" to intrude upon the privacy of those same locations.
Like subdivision 1(a), subdivision 1(c) and 1(d) each contain a separate specific-intent clause. See Minn. Stat. § 609.746, subd. 1(c)(2), 1(d)(2). Because subdivision 1(c) and 1(d) do not require an entry onto property, they suggest that the pertinent actus reus, that is, the wrongful deed, of the interference-with-privacy statute is the act of peeping into a specific location where a "reasonable person would have an expectation of privacy." See id="p924" href="#p924" data-label="924" data-citation-index="1" class="page-label">*924id. , subd. 1(c)(1) (applying to peeping "in the window or other aperture of a sleeping room in a hotel, ... a tanning booth, or other place where a reasonable person would have an expectation of privacy."); id. , subd. 1(d)(1) (forbidding the installation or use of any device in those locations to interfere with an expectation of privacy). Accordingly, reading subdivision 1(a) in conjunction with subdivision 1(c) and 1(d) suggests that the intent element in clause (3) modifies only the wrongful deed element of clause (2)-the act of peeping.
Moreover, reading clauses (1) (entry) and (2) (peeping) together would establish a chronology to the crime. One first needs to enter another's property and then, perhaps immediately, or perhaps after time passes and the opportunity presents itself, to surreptitiously peep in the window of a house or dwelling. If the text were read as establishing a temporal aspect, the intent requirement of clause (3) would reasonably apply only to the act of peeping and not of entering, further undermining application of the series-qualifier canon.
Finally, we are not persuaded by Pakhnyuk's contentions that had the Legislature wanted to apply the intent element of clause (3) only to clause (2) (peeping), it would have combined clauses (2) and (3) together, or used more precise language in clause (3). To be sure, these proposed revisions would have clarified the reach of the intent clause, and the Legislature certainly could have chosen this path. But it is also true that, had the Legislature wanted to apply the intent clause to all of the previous acts in subdivision 1, it could have done so by placing the intent element at the beginning of the subdivision in the introductory clause. Even though the Legislature could have crafted subdivision 1(a) differently, that does not, in this instance, prove that one of the interpretations offered by the parties is superior to the other.
In sum, given the particular ambiguities arising from subdivision 1(a)'s text and structure, we conclude that it is "susceptible to more than one reasonable interpretation." State v. Hayes , 826 N.W.2d 799, 805 (Minn. 2013). Accordingly, we conclude that subdivision 1(a) is ambiguous.
B.
When a statute is ambiguous, we may rely on the canons of statutory construction to resolve the ambiguity. Thonesavanh , 904 N.W.2d at 435. We may ascertain the intention of the Legislature by considering, for example, past versions of the law at issue, the occasion and necessity for the law, the mischief that the law was meant to remedy, and the object that the law seeks to attain. See Minn. Stat. § 645.16 (listing factors); see also Auto Owners Ins. Co. v. Perry , 749 N.W.2d 324, 328 (Minn. 2008) (relying on an earlier version of statute to ascertain legislative intent); State v. Al-Naseer , 734 N.W.2d 679, 684 (Minn. 2007) (same). Here, we find that the legislative history and purpose of subdivision 1(a) resolve the ambiguity in the State's favor.
The legislative history shows that the original purpose of section 609.746 was to criminalize the act of peeping with the intent to interfere with another person's privacy, without regard to whether such intent was present at the moment the defendant first entered the property of another. The Legislature enacted the criminal interference-with-privacy statute in 1979. Act of May 29, 1979, ch. 258, § 19, 1979 Minn. Laws 548, 555 (codified as Minn. Stat. § 609.746 (1980) ). Before that enactment, interference with privacy was sanctioned only at the municipal level. Hearing on H.F. 555, Subcomm. on Criminal Law of the S. Judiciary Comm., 71st *925 Minn. Leg., May 3, 1979 (statement of Bernie Steffen).
The original draft of the bill considered by the Senate subcommittee did not contain the property-entry element. H.F. 555, § 20, 71st Minn. Leg. 1979 (bill as referred to subcommittee). Rather, it criminalized any peeping through a window of any dwelling "with intent to intrude upon or interfere with the privacy of a member of the household thereof."[4] Id. At the Senate subcommittee hearing, a criminal-defense attorney raised concerns about the word "surreptitiously" and the constitutionality of the proposed statute. Hearing on H.F. 555, supra (statement of Carol Nevel). Only after these concerns were raised was the property-entry element added. See id. (motion of Sen. Gerry Sikorski). As enacted, the statute read as follows:
Any person who enters upon another's property and surreptitiously gazes, stares, or peeps in the window of a house or place of dwelling of another with intent to intrude upon or interfere with the privacy of a member of the household thereof is guilty of a misdemeanor.
Act of May 29, 1979, ch. 258, § 19, 1979 Minn. Laws at 555.
This legislative history suggests that the property-entry element was included to narrow the scope of where the crime of interference with privacy can physically occur. By enacting the property-entry element, the Legislature ensured that no passerby legitimately on a public sidewalk or street could be charged merely for looking into another person's house. The specific-intent element, by contrast, was present in the draft of the law when first considered and its relative location has never changed. Compare H.F. 555, with Minn. Stat. § 609.746, subd. 1(a). The intent element continues to follow the act of gazing, staring, or peeping into another's home. Minn. Stat. § 609.746, subd. 1(a).
This history shows that adding the property-entry element was not originally intended to affect the scope of the specific-intent element. Had the Legislature intended to apply an intent element to an entry onto property, it would have changed the location of the intent element to the beginning of the sentence to make clear that it applied to both the entry and peeping elements. In fact, the Legislature did precisely that in 1987, when it enacted subdivision 2 of section 609.746. See Act of May 28, 1987, ch. 307, § 4, 1987 Minn. Laws 1837, 1839 (codified at Minn. Stat. § 609.746, subd. 1 (1988) ).[5] By placing "with the intent to harass, abuse, or threaten another" at the beginning of subdivision 2, the Legislature directed that this element apply to the following enumerated acts: 1) "repeatedly follows or pursues another," and 2) doing so "after being told not to ... by the persons being followed or pursued." Id. Tellingly, when adding the property-entry element to subdivision 1(a), see Hearing on H.F. 555, supra , the drafters did not shift the location *926 of the intent element to the beginning of the sentence.
Further, the language now codified at section 609.746, subdivision 1(a), remained virtually unchanged until 1994,[6] when the Legislature gave the statute its current structure of three numbered clauses separated by semicolons and line breaks. Act of May 10, 1994, ch. 636, § 47, 1994 Minn. Laws 2170, 2216-17 (codified as amended at Minn. Stat. § 609.746, subd. 1(a) ). It was the 1994 amendment that added the phrase "does so" to clause (3), and moved the phrase "is guilty of a misdemeanor" to the beginning of subdivision 1(a). See id.
The Legislature also expanded subdivision 1(a) so that it applied to peeping through a "window or any other aperture ." Id. (emphasis added). This amendment sought to close a loophole in existing law to prevent someone who interfered with privacy in other ways, such as creating another type of opening from a building's crawl space, from evading criminal liability. See Hearing on S.F. 2602, S. Comm. on Crime Prevention, 78th Minn. Leg., Mar. 22, 1994 (attachment 4) (letter of Lyon County Attorney Kathryn M. Keena) (expressing concerns that, absent the "aperture" language, the State was unable to prosecute a person who peeped through a hole chiseled in the ceiling of a bathroom).
Crucially, the 1994 amendment made no changes to the intent element now contained in subdivision 1(a)(3). The effect of the 1994 amendment, therefore, was to expand the scope of prohibited conduct to close a perceived loophole in the statute and to reformat the elements of the crime into separate, numbered clauses.
Ordinarily, we presume that the Legislature intends to change the law when it amends a statute. Braylock v. Jesson , 819 N.W.2d 585, 588 (Minn. 2012). But we have held that this presumption does not apply when "it appears on examination that the statutory amendment was only for the purpose of rearrangement , clarification, or to make a second statute applicable to a situation theretofore covered by another statute." Washington Cty. v. Am. Fed. of State, Cty. & Mun. Emps., Council No. 91 , 262 N.W.2d 163, 168 n.5 (Minn. 1978) (emphasis added); see also Hayes-Lucas Lumber Co. v. Gieseke , 172 Minn. 504, 215 N.W. 857, 858 (Minn. 1927). Because the 1994 amendment merely rearranged the part of the statute that concerns us here-subdivision 1(a)-the presumption of a substantive change in law does not apply. Accordingly, review of the legislative history demonstrates that, from the statute's inception to its current language today, the Legislature intended for the intent element to apply only to the act of peeping.
In addition, the clear purpose for enacting the statute-the protection of personal privacy-also favors the State's interpretation. This purpose is evident from the statute's language. The very title of the statute is "interference with privacy." Minn. Stat. § 609.746. See La Bere v. Palmer , 232 Minn. 203, 44 N.W.2d 827, 829 (1950) (stating that the title of an act "may be considered in aid of its construction"). Subdivision *927 1(a) prohibits acts done with "intent to intrude upon or interfere with the privacy" of another in the sacred space of one's own home. See Minn. Stat. § 609.746, subd. 1(a)(3). Other paragraphs speak of areas "where a reasonable person would have an expectation of privacy and has exposed or is likely to expose their intimate parts." Id. , subd. 1(c) - 1(d). The whole thrust of the statute is to protect people from surreptitious intrusion into places where they have a reasonable expectation of privacy.
Construing the statute to mean that the intent to intrude must only be proven when the accused peeps into a home, and not when an accused enters the property, best furthers the legislative goal of safeguarding individual privacy. By contrast, adopting Pakhnyuk's reading of the statute would undercut this protective goal because his interpretation would not cover intrusions by those who lacked specific intent when they entered the property but then peeped when an opportunity arose. As this case unfortunately illustrates, it is not always possible to anticipate or guard against a potential offender who, with permission or right to initially enter the property-whether it be to stay with a relative, perform some hired work, or live in the same apartment complex as the victim-then uses that vantage point to intrude upon another's personal privacy at home. As the State bluntly noted, "there is no evidence that the legislature intended to allow 38-year-old men to peep in the windows of 14-year-old girls as long as they didn't know about the opportunity before they entered the property."
Finally, as discussed above, our interpretation of subdivision 1(a) is supported by analysis of the language of subdivision 1(c) and 1(d) that focuses on the specific intent to peep, or to intrude upon privacy, when one is in a place where a person would have a reasonable expectation of privacy. Minn. Stat. 609.746, subd. 1(c) - 1(d).
In sum, we hold that the legislative history and purpose of subdivision 1(a) support the conclusion that the intent requirement in clause (3) of subdivision 1(a) applies only to the peeping conduct described in clause (2), and not to the property-entry conduct in clause (1). The State, therefore, was not required to prove that Pakhnyuk had the intent "to intrude upon or interfere with the privacy of" his victim when he "enter[ed] the property of another" for the jury to find him guilty of interference with privacy. Minn. Stat. § 609.746, subd. 1(a). Because the evidence was sufficient to satisfy the intent element of interference with privacy, Pakhnyuk's conviction under section 609.746, subdivision 1(a), is affirmed.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.
Concurring, Gildea, C.J.

We note that our decision does not rest on any purported right to an appeal under the federal Due Process Clause, which has never been recognized. Jones v. Barnes , 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("There is, of course, no constitutional right to an appeal...."). Our decision instead rests on our own rules of appellate procedure and the interests that they are designed to promote.

This distinction may matter because rules of grammar are available to determine whether a statute is ambiguous in the first instance. See, e.g. , Minn. Stat. § 645.08(1) ; Struzyk , 869 N.W.2d at 286-87 ; Riggs , 865 N.W.2d at 682. A canon of construction, on the other hand, may only be available after a statute has been determined to be ambiguous. See Struzyk , 869 N.W.2d at 284-85. We have previously applied the last-antecedent rule without determining that the statute was ambiguous. Ryan Contracting Co. v. O'Neill & Murphy, LLP , 883 N.W.2d 236, 244-45 (Minn. 2016). We have never addressed when the series-qualifier canon may be applied.

The court of appeals considered a third grammatical rule that neither party raised, the "nearest-reasonable-referent" rule. Pakhnyuk , 906 N.W.2d at 577-78. Some commentators debate the distinction between the "last-antecedent rule" and the "nearest-reasonable-referent rule" of grammar. See, e.g. , Scalia & Garner, Reading Law , supra , at 152. We decline to enter this grammatical fray, however, because neither party relied upon the latter. Even assuming that the rules are distinct, however, they are similar enough that subdivision 1(a)'s semicolons and line breaks counsel against application of the "nearest-reasonable-referent" rule.

The original version of the bill presented to the Senate Judiciary Committee's Subcommittee on Criminal Law stated: "Any person who surreptitiously looks, gazes, stares, or peeps in the window of a house or place of dwelling of another with intent to intrude upon or interfere with the privacy of a member of the household thereof is guilty of a misdemeanor." H.F. 555, supra .

When enacted in 1987, subdivision 2 provided: "A person who, with the intent to harass, abuse, or threaten another, repeatedly follows or pursues another, after being told not to do so by the person being followed or pursued, is guilty of a misdemeanor." Id. , § 4, 1987 Minn. Laws at 1839. See also Act of May 20, 1993, ch. 326, art. 2, § 34, 1993 Minn. Laws 1974, 2019 (repealing subdivision 2).

The Legislature did amend the language of subdivision 1(a) in 1987. See Act of May 28, 1987, ch. 307, § 4, 1987 Minn. Laws at 1839. The 1987 amendment divided section 609.746 into two subdivisions, and the statutory language at issue was placed in the first subdivision with only minor alteration:
Subdivision 1. [SURREPTITIOUS INTRUSION.] AnyA person who enters upon another's property and surreptitiously gazes, stares, or peeps in the window of a house or place of dwelling of another with intent to intrude upon or interfere with the privacy of a member of the household thereof is guilty of a misdemeanor.
Id. (amending notations preserved).